**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CARDIONET, LLC, and BRAEMAR MANUFACTURING, LLC,<br><br>      Plaintiffs,<br><br>    v.<br><br>INFOBIONIC, INC.,<br><br>      Defendant. | Civil Action No. 17-cv-10445-IT<br><br>Hon. Indira Talwani |

**JOINT STATEMENT REGARDING THE PARTIES' PROPOSED SCHEDULES AND
AGENDA FOR THE AUGUST 11, 2020 SCHEDULING CONFERENCE**

Plaintiffs CardioNet, LLC and Braemar Manufacturing, LLC (collectively, "CardioNet") together with Defendant InfoBionic, Inc. ("InfoBionic") respectfully submit this Joint Statement per the Court's July 23, 2020 Electronic Order (D.I. 70). CardioNet's proposed schedule is attached as Exhibit A and InfoBionic's proposed schedule is attached as Exhibit B.[1] The parties identify the issues below to be discussed at the August 11, 2020 scheduling conference:

**I.      PROPOSED CASE SCHEDULE**

        **InfoBionic's Request to Stay this Case Until Its Forthcoming Petition for Certiorari Is Resolved**

A.    **1.    CardioNet's Position**

The Court should reject InfoBionic's request to stay this case pending the Supreme Court's ruling on InfoBionic's "forthcoming petition for certiorari." To obtain a stay, InfoBionic must show that it is likely to succeed on the merits of its petition for certiorari, that it will suffer irreparable harm absent a stay, and that the public interest weighs in favor of a stay. *See Planned Parenthood of Se. Pennsylvania v. Casey*, 510 U.S. 1309, 1310 (1994) (denying motion to stay pending filing of a petition for certiorari) (Souter, J.); *Robles v. Domino's Pizza, LLC*, No. 216CV06599SJOFFM, 2019 WL 6482232, at *1 (C.D. Cal. July 30, 2019) (denying motion for stay pending decision on petition for certiorari); *United States v. Evans*, No. 1:02CR00136, 2006 WL 2872723, at *1 (W.D. Va. Oct. 9, 2006) (same); *McMillan v. DeKalb Cty., Georgia*, No.

---

[1] InfoBionic's Statement: InfoBionic's proposed schedule tracks the Court's original schedule [#31] with three exceptions. First, it includes a stay pending resolution of InfoBionic's petition for writ of certiorari. Ex. B, Sec. I.1. Second, it includes a process for early summary judgment on patent ineligibility under § 101 based on an evidentiary record and keys other dates off of the resolution of this motion, just as the Court's original schedule keyed those dates off of resolution of the motion to dismiss under § 101. *Id.*, Sec. I.2. Third, it includes the following statement: "The parties contemplate that depositions may be taken remotely via videoconference so that depositions can proceed during the ongoing COVID-19 pandemic." *Id.*, Sec. II.3.

1:04-CV-3039-BBM, 2007 WL 9700672, at *3 (N.D. Ga. Oct. 5, 2007) (same).[2] InfoBionic has made no such showing.

InfoBionic's petition is exceedingly unlikely to succeed for several reasons. First, InfoBionic's petition here is particularly ill-suited for Supreme Court review. Unlike some of the cases InfoBionic highlights that included sharp splits among the judges and numerous dissenting opinions (such as *American Axle & Mfg., Inc. v. Neapco Holdings LLC*, No. 2018-1763, --- F.3d ---, 2020 WL 4377542 (Fed. Cir. July 31, 2020)), in this case **all three Federal Circuit judges agreed** that the '207 patent is eligible and not directed to any abstract idea, and ***unanimously*** denied InfoBionic's petition for panel review. Second, as this Court is well-aware, Supreme Court grants of certiorari are very rare in general—only about 1% to 3% of petitions are granted in general.[3] That fact alone counsels in favor of denying InfoBionic's request. *See Robles*, 2019 WL 6482232, at *3 ("As a threshold matter, the Court notes that the United States Supreme Court grants certiorari in only a handful of cases every year. Accordingly, it is difficult for Defendant to show that it will prevail on the merits if its writ petition, irrespective of the substance of the arguments that it makes."). Third, the Supreme Court has shown no interest in revisiting its § 101 jurisprudence in recent years. It has denied dozens of § 101 petitions in the last few years, including in many cases that observers believed warranted review (such as *Berkheimer*).[4] InfoBionic points to nothing, and cannot seriously contend, that this case presents

---

[2] Contrary to InfoBionic's position, CardioNet has cited the proper standard for a stay pending a petition for certiorari. *See, e.g.*, *Robles*, 2019 WL 6482232, at *1 (addressing motion to stay pending petition for certiorari, quoting Supreme Court decision *Nken v. Holder*, 556 U.S. 418, 434 (2009) for the applicable legal standard).

[3] *See* https://www.scotusblog.com/reference/educational-resources/supreme-court-procedure/ ("Of the 7,000 to 8,000 cert petitions filed each term, the court grants certiorari and hears oral argument in only about 80."); https://supremecourtpress.com/chance_of_success.html.

[4] *See, e.g.*, https://www.ipwatchdog.com/2019/06/16/supreme-court-denies-43rd-petition-cert-101-grounds-villena-v-iancu/id=110425/ ("Supreme Court Denies 43rd Petition for Cert on 101

a better vehicle for Supreme Court review than the dozens of cases in which the Supreme Court has denied review. Fourth, InfoBionic makes no showing that it is likely to succeed on the merits, in the unlikely event that the Supreme Court grants InfoBionic's petition. Indeed, InfoBionic does not address the substance of its petition at all. *See Presley v. United States*, No. 9:18-CV-80649-RLR, 2018 WL 8514481, at *1 (S.D. Fla. Nov. 6, 2018) (denying motion to stay pending certiorari, stating "Petitioners have shown no likelihood of success on the merits, particularly now that the Eleventh Circuit has rejected their position.").

InfoBionic likewise makes no attempt to establish that it would be irreparably injured absent a stay, or that the public interest weighs in favor of a stay. Notably, litigation expenses do not qualify as irreparable injury. *See Katz v. Liberty Power Corp., LLC*, No. 18-CV-10506-ADB, 2020 WL 3440886, at *2-4 (D. Mass. June 23, 2020) (denying stay in Telephone Consumer Protection Act case, even though "Supreme Court recently granted certiorari in related case," finding that litigation expenses were not irreparable injury and "[o]ther district courts have denied similar motions for stays based on the Supreme Court's grant of certiorari."). A stay pending certiorari would severely prejudice CardioNet by delaying this case by several more months, in addition to the three and a half years it has already been delayed due to InfoBionic's unsuccessful challenge to the eligibility of the '207 patent.[5]

---

Grounds" since *Alice* as of June 16, 2019); https://www.ipwatchdog.com/2020/01/13/scotus-will-not-unravel-section-101-web/id=117800/ (Supreme Court denies five additional petitions).
[5] CardioNet estimates that if InfoBionic files its petition on November 2, 2020—the deadline for filing its petition—the Supreme Court would grant or deny the petition in February or March 2021.

In short, InfoBionic at most speculates that there is a hypothetical possibility that the Supreme Court could grant its petition, but does not even try to meet its burden in seeking a stay. The Court should thus deny InfoBionic's request.[6]

### 2. InfoBionic's Position

The Court should exercise its inherent power to stay this case pending resolution of InfoBionic's forthcoming petition for a writ of certiorari. *Landis v. N. American Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay is incidental to the power inherent in every court to control the disposition of the causes on its docket with the economy of time and effort for itself, for counsel, and for litigants."). Courts in this District have exercised their power to stay cases pending resolution of petitions for certiorari many times. *E.g., Ibanez v. Dolan*, 189 F. Supp. 3d 191, 192 (2016) ("court stayed further proceedings pending the outcome of a petition for writ of certiorari" filed by a non-party); *Bais Yaakov of Spring Valley v. Act, Inc.*, 186 F. Supp. 3d 70, 74 (2016) (case stayed "pending the outcome of Defendants' petition for certiorari"); *DeCambre v. Brookline Housing Auth.*, No. 1:14-cv-13425, D.I. 68 (D. Mass. Oct. 18, 2016) (granting stay pending resolution of Defendants' petition for writ of certiorari).

The Court should exercise that power here because there is good reason to believe that the Supreme Court will address patent eligibility under 35 U.S.C. § 101 again soon. The Supreme Court already has demonstrated an interest in this area, taking three cases in the early 2010s.[7] More recently, it has become apparent that the Federal Circuit cannot resolve its

---

[6] The cases cited by InfoBionic are not on point. In *Ibanez v. Dolan*, 189 F. Supp. 3d 191, 192 (D. Mass. 2016), the court granted the parties' joint motion to stay pending certiorari, without addressing the merits. *See* Civil Action No. 13-11700-RGS, Dkt. Nos. 35-36 (July 21-22, 2015). Similarly, in *DeCambre v. Brookline Housing Auth.*, No. 1:14-cv-13425, D.I. 68, the court did not issue an opinion or address the merits.

[7] *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208 (2014); *Mayo Collaborative v. Prometheus Labs.*, 566 U.S. 576 (2013); *Bilski v. Kappos*, 561 U.S. 593 (2010).

4

fractured interpretation of Supreme Court precedent by sitting *en banc*, leaving it to the Supreme Court to provide further guidance. *American Axle & Mfg., Inc. v. Neapco Holdings LLC*, No. 2018-1763, --- F.3d ---, 2020 WL 4377542 (Fed. Cir. July 31, 2020) (**denying *en banc* review in a 6-6 vote with 5 opinions**); *Athena Diagnostics, Inc. v. Mayo Collaborative Servs., LLC*, 927 F.3d 1333, 1334 (Fed. Cir. 2019) (denying *en banc* rehearing with 4 opinions); *see also id.* at 1363 ("No need to waste resources with additional en banc requests. ***Your only hope lies with the Supreme Court*** or Congress.") (Moore, J., dissenting (emphasis added)); *Aatrix Software, Inc. v. Green Shades Software, Inc*., 890 F.3d 1354, 1355 (Fed. Cir. 2018) (denying *en banc* rehearing with 3 opinions); *see also id.* at 1361-62 ("**Resolution of patent-eligibility issues requires higher intervention**, hopefully with ideas reflective of the best thinking that can be brought to bear on the subject.") (Lourie, J., concurring (emphasis added)).[8]

Recognizing the "confusion" in the law, the Solicitor General has indicated that the government will support the Supreme Court's revisiting its § 101 jurisprudence in an appropriate case. Brief for the United States as Amicus Curiae, *Hikma Pharms. USA, Inc. v. Vanda Pharms. Inc.*, No. 18-817, 2019 WL 6699397, at *8 (Dec. 6, 2019) ("**The confusion created by this Court's recent Section 101 precedents warrants review in an appropriate case**.").

CardioNet relies on the wrong legal standard to oppose a stay, citing the inapt standard for the Supreme Court to stay an appellate court's mandate. *See Planned Parenthood of Se. Pennsylvania*, 510 U.S. at 1310. Under the district court's inherent power to stay proceedings that the Supreme Court recognized in *Landis*, courts in this district typically consider three

---

[8] In a similar vein, this Court noted that the Federal Circuit's disparate decisions have created a challenge for district court judges seeking to faithfully apply Supreme Court precedent. No. 1:15-cv-11803-IT, D.I. 507 at 35:3-10 (Feb. 6, 2020 summary judgment hearing transcript) ("[Y]ou have the Federal Circuit strongly supporting the pre-*Alice* world. But I'm bound by what the Supreme Court has said, and I have been trying very hard to apply that ….").

factors: "(1) the stage of the litigation, including whether discovery is complete and a trial date has been set; (2) whether a stay will simplify the issues in question and the trial of the case; and (3) whether a stay will unduly prejudice or present a clear tactical disadvantage to the non-moving party." *ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 356 (D. Mass. 2015). All three factors favor a stay here: (1) discovery has not begun and no trial date has been set; (2) if the Supreme Court grants certiorari to address § 101, that will simplify the issues; and (3) there is no undue prejudice or tactical disadvantage to CardioNet's waiting some additional months to raise this case. *See id.* As explained below, CardioNet was responsible for a much longer delay in pursuing this case.

|   |   |
|---|---|
| B. | **InfoBionic's Request to Stay this Case Until Its Motion for Attorneys' Fees, Non-Taxable Costs, and Expert Fees in CardioNet's Earlier-Filed Case Is Resolved** |

### 1. CardioNet's Position

The Court should reject InfoBionic's unusual and meritless request to delay this case, based solely on a motion for attorneys' fees pending in a different case. InfoBionic does not explain how the outcome of InfoBionic's motion for attorneys' fees in Civil Action No. 1:15-cv-11803-IT will have any legal impact on this case. Notably, InfoBionic refused to defer the time for filing motions for fees in that case despite the fact that CardioNet is entitled to an appeal, yet seeks to delay this case pending its yet-to-filed and tenuous petition to the Supreme Court. No. 1:15-cv-11803-IT, D.I. 514 at 2-5, 7-9.

Moreover, contrary to InfoBionic's assertion, CardioNet would be prejudiced by further delay. CardioNet diligently sought leave to assert the '207 patent in the Related Action just six weeks after it learned about InfoBionic's infringement of that patent during an October 2016 deposition. No. 1:15-cv-11803-IT, D.I. 275 at 3. The Court denied leave because fact discovery had closed and a *Markman* hearing had been held, but expressly stated the '207 patent could be

brought in a "separate action" to "avoid delayed resolution of the claims in" the Related Action. *Id*. at 4. And so, CardioNet filed the instant action. This case has already been delayed for three and a half years due to InfoBionic's unsuccessful eligibility attack on the '207 patent. *See* D.I. 1 (case filed Mar. 16, 2017). InfoBionic seeks further delay so that it can continue competing with CardioNet in the marketplace using CardioNet's patented technology without authorization. That is not a proper basis to further delay resolution of this case.

### 2. InfoBionic's Position

As detailed in InfoBionic's memorandum in support of its Motion for Attorneys' Fees, Non-Taxable Expenses, and Expert Fees, CardioNet has used its litigation against InfoBionic to inhibit InfoBionic's market entry by imposing unnecessary legal costs on InfoBionic, which remains privately funded. Consistent with that approach, CardioNet, unsurprisingly, seeks to resume the '207 patent case immediately, continuing its practice of litigating in a manner intended to burden InfoBionic with further litigation costs. InfoBionic respectfully submits that the parties and the Court should focus their efforts to resolve CardioNet's potential liability for fees and expenses in the originally filed case before resuming this case, which CardioNet's own actions demonstrate there is no urgency to resolve.

CardioNet waited two years to seek to assert the '207 patent until after the *Markman* hearing in the original case, seeking to prevent InfoBionic from enjoying a respite from legal costs while the Court decided claim construction. There was no excuse for CardioNet's waiting until such a late stage. CardioNet asserted the '207 patent before obtaining any discovery against other competitors. First Am. Compl. 3 [#20], *CardioNet, Inc. v. The Scottcare Corp.*, No. 2:12-cv-02516-PBT (E.D. Pa.). Here, CardioNet tried to add the '207 patent after the Rule 16 deadline had passed, and after "fact discovery had closed and a *Markman* hearing had been held on the [other] six patents," and could not identify any purportedly "new information [that]

7

differed from evidence already in their possession" to justify its delay. No. 1:15-cv-11803-IT, Order at 3-4 [#275]. The Court denied CardioNet leave to amend, and CardioNet filed a deficient complaint regarding the '207 patent in this action in March 2017. [#1]. In response to a motion to dismiss, CardioNet filed a new complaint on May 18, 2017 [#25]—over two years after CardioNet filed its original complaint against InfoBionic—addressing the facial deficiencies InfoBionic had identified.

CardioNet's own delay demonstrates that CardioNet will suffer no prejudice from having the Court decide CardioNet's liability for fees and expenses in the original case before InfoBionic is required to divert additional funds away from R&D and sales to litigation.

### C.   InfoBionic's Request that the Court Take Evidence and Proceed to Summary Judgment Under 35 U.S.C. § 101

#### 1.   CardioNet's Position

InfoBionic is precluded from relitigating the eligibility of the '207 patent in this Court, because the Federal Circuit decided that the '207 patent is eligible as a matter of law and ***expressly rejected*** remanding the issue for further proceedings.

Specifically, the Federal Circuit held that "under *Alice* step one [] the asserted claims of the '207 patent are not directed to an abstract idea[.]" *See* Ex. C (Apr. 17, 2020 Op.) at 18. The court then considered whether a remand was appropriate. The court found that "***a remand is unnecessary***" because "*Alice* step one presents a legal question that can be answered based on the intrinsic evidence." *Id.* at 19. The court further held that "whether the prior art demonstrates that the idea or other aspects of the claim are known, unknown, conventional, unconventional, routine, or not routine" could not affect its holding that the claims are patent-eligible. *Id.*; *see also id.* at 22 ("Thus, we simply clarify that step one of the *Alice* framework ***does not require an***

***evaluation of the prior art or facts outside of the intrinsic record*** regarding the state of the art at the time of the invention.").[9]

Thus, the Federal Circuit expressly rejected remanding the eligibility issue for further proceedings—including for an assessment of prior art.

Not satisfied with this result, InfoBionic petitioned for rehearing. In its petition, InfoBionic "ask[ed] the panel to clarify that its decision, which is based on assuming facts in favor of CardioNet and identifying a lack of record evidence at the pleading stage, does not foreclose the district court from revisiting patent-eligibility at later stages, after discovery." *See* Ex. D (May 18, 2020 Pet.) at 7. The Federal Circuit **denied InfoBionic's petition**. *See* Ex. E (June 4, 2020 Order) at 2. Thus, the Federal Circuit not only expressly decided that remand was inappropriate, but also rejected InfoBionic's further request to remand the eligibility issue.

The law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Banks v. United States*, 741 F.3d 1268, 1276 (Fed. Cir. 2014). Similarly, the mandate rule precludes relitigation of issues decided by the appellate court. *See Retractable Techs., Inc. v. Becton Dickinson & Co.*, 757 F.3d 1366, 1371 (Fed. Cir. 2014) ("Unless remanded by this court, all issues within the scope of the appealed judgment are deemed incorporated within the mandate and thus are precluded from further adjudication.") (quoting *Engel Indus., Inc. v. Lockformer Co.*, 166 F.3d 1379, 1383 (Fed. Cir. 1999)); *see also Akamai Techs., Inc. v. Limelight Networks, Inc.*, No. CV 06-11109-RWZ, 2016 WL 10675906, at *3 (D. Mass. Apr. 25, 2016) (applying mandate rule in district court).

---

[9] Judge Dyk, concurring, "agree[d] that no remand is required" because "[o]n appeal, the defendant does not argue that the case should be remanded to allow the defendant to develop a fuller record." *Id.* at 25-26.

9

The law-of-the-case doctrine squarely applies here, because the Federal Circuit decided that the '207 patent is eligible as a matter of law. *See* Ex. C (Apr. 17, 2020 Op.) at 18-19, 22. The mandate rule also squarely applies here, because the Federal Circuit expressly considered but rejected remanding the eligibility issue. *Id.* Thus, the Court should reject InfoBionic's attempt to litigate issues in this Court in violation of the Federal Circuit's decision. InfoBionic's reliance on selective snippets from oral argument on appeal, and its false statements about supposedly undisputed facts, cannot change the Federal Circuit's express holdings.[10]

In fact, even the snippets selected by InfoBionic relate solely to whether premature ventricular beats is considered an arrhythmia, and not whether it is considered ***in the context of atrial fibrillation and atrial flutter***, as claimed in the '207 patent. *See, e.g.*, '207 patent at claim 1; Ex. C (Apr. 17, 2020 Op.) at 13. The Federal Circuit recognized InfoBionic's misdirection at oral argument:

> Judge Stoll: What about the detection of the premature ventricular beat, and how that was not previously done before, and how that in turn has resulted in more accurate detection?
>
> InfoBionic's counsel: I think there is evidence in the record that doctors did rely on premature ventricular beats.
>
> Judge Stoll: I would love to see that.
>
> …
>
> Judge Stoll: You said previously you were going to show us how the record shows that doctors previously could look and determine and use the premature ventricular beat to determine that someone was having an atrial fibrillation. I just don't see that in the text that you provided here.

---

[10] InfoBionic relies upon *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994) for the proposition that "interlocutory orders, including denials of motions to dismiss, remain open to trial court reconsideration, and do not constitute the law of the case." This principle is wholly inapplicable here, because it does not address non-interlocutory orders (i.e., the Court's dismissal of the case under § 101), and it does not address reconsideration after an appellate decision. Obviously, this Court cannot now "reconsider" matters the appellate court expressly decided.

10

http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-1149.MP3 at 14:39-15:10 & 19:30-44 of MP3.  InfoBionic's efforts to mislead this Court should be rejected.

### 2. InfoBionic's Position

When the time comes to resume this case, the Court should pursue an efficient resolution by (i) taking evidence on the one issue that the Federal Circuit deemed necessary to resolve the § 101 inquiry and (ii) then proceeding to summary judgment, as proposed in InfoBionic's schedule.  Fed. R. Civ. P. 1 (The Rules "should be … employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").  The Federal Circuit majority stated that "the heart of [this Court's] erroneous step one analysis [wa]s the incorrect assumption that the claims are directed to automating known techniques," asserting "nothing in the record supports the district court's fact finding (and InfoBionic's assertion) that doctors long used the claimed diagnostic processes."  *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1730 (Fed. Cir. 2020) ("Nothing in the record in this case suggests that the claims merely computerize pre-existing techniques for diagnosing atrial fibrillation and atrial flutter.").  The Court thus can resolve this case by taking evidence on one issue—whether "doctors long used the claimed diagnostic processes"—and then revisiting patent eligibility under § 101.

On appeal, CardioNet exploited the fact that the appeal arose on a motion to dismiss, without an evidentiary record, to avoid affirmance and prolong this litigation.  But there can be no genuine factual dispute that "doctors long used the claimed diagnostic processes," i.e., that doctors commonly distinguished premature ventricular contractions (PVCs) in diagnosing atrial fibrillation/flutter.  *Id.*  Indeed, when CardioNet's counsel was pressed at oral argument before the Federal Circuit, CardioNet's counsel, Ms. Fukuda, had to *concede* (despite her best efforts to avoid answering that question) it was common to look at premature ventricular beats in diagnosing arrhythmias but retreated to the lack of record *evidence* on this incontrovertible point:

>Ms. Fukuda: … What this specific device does is to look at—identify—premature ventricular beats, takes that into consideration and that has an impact on this machine being able to determine, accurately, whether there's the existence of atrial fibrillation or atrial flutter. That is an improvement over the prior art devices. There was a general understanding, as the patent had set forward, that *premature ventricular beats is generally seen as being irrelevant to atrial fibrillation. But what this invention does is says, no, you need to look at the premature ventricular beats*.
>
>Judge Dyk: *It was common to look at the premature ventricular beats, right?*
>
>Ms. Fukuda: *There is no evidence of that*, Your Honor.
>
>Judge Dyk: Well, isn't that the case?
>
>Ms. Fukuda: What we have to do is we have to look at what the record puts forward. Now…
>
>Judge Dyk: Wait a minute. *Answer my question.* I'm trying… *Was it not common to look at premature ventricular beats*, maybe not in the way that the dependent claims here describe, but it was common to do that, right?
>
>Ms. Fukuda: Whether premature ventricular beats have been looked at in the past as some sort of arrhythmia, *yes, Your Honor*.
>
>Judge Stoll: But, wait, just for a second. *Is there any record evidence to show that?* For example, the district court says multiple times that this is simply a technique that doctors have used for ages. Do you know of any evidence to support that?
>
>Ms. Fukuda: *There is no such evidence whatsoever put forward in front of the district court.* All we have here are InfoBionic's attorney arguments—conclusory arguments, unsupported by evidence—that this is what doctors do.

http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2019-1149.MP3 at 1 min. 46 sec. to 3 min. 36 sec. of MP3 (emphasis added). In response, CardioNet points to another portion of the oral argument where an appellate judge probed for "evidence in the record" regarding whether doctors looked at "premature ventricular beats," stating, *"I would love to see that."* Id. at 14 min. 39 sec. to 15 min. 10 sec.

Before this Court, CardioNet cannot, consistent with its Rule 11 obligations, contest that the purported "improvement over the prior art devices" that it touted at oral argument—

"look[ing] at the premature ventricular beats"—was, in fact, a "technique that doctors have used for ages." *Id.* Accordingly, the Court need only take evidence on the sole indisputable factual issue that would facilitate resolution of this case on summary judgment on an evidentiary record that the Federal Circuit cannot question. This approach will resolve this case efficiently, and thus conserve the Court's and the parties' limited resources. Fed. R. Civ. P. 1.

CardioNet incorrectly argues that reversal of this Court's grant of InfoBionic's Rule 12(b)(6) motion to dismiss under § 101 precludes judicial reevaluation of patent ineligibility based on the evidentiary record that the panel concluded was lacking. Reversal of the grant of the motion to dismiss under § 101, i.e., denial of the motion, leaves the issue "open to trial court reconsideration" at a later stage. *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994). While the panel reversed this Court's decision *on InfoBionic's 12(b)(6) motion to dismiss*, the panel otherwise remanded for further proceedings, which includes evidentiary development and potential decision by this Court under Rule 56 or at trial. As discussed above, the majority faulted this court for *not* relying on evidentiary record, *CardioNet*, 955 F.3d at 1730, and the key evidentiary issue is not subject to genuine dispute. To the extent that CardioNet seeks to preclude InfoBionic from asserting a defense under § 101 based on a developed evidentiary record, the appropriate course is for CardioNet to file an appropriate motion after InfoBionic answers the complaint. CardioNet's apparent intention to do so further counsels for staying this case until InfoBionic's forthcoming petition for writ of certiorari is resolved.

**Post-*Markman* Hearing Dates**

1. **CardioNet's Position**

Courts routinely set dates for post-*Markman* Hearing activity.[11] Doing so allows the case to move forward even if the Court is unable to issue a claim construction order prior to the beginning of expert discovery and promotes the "speedy" resolution of this long-pending case. Fed. R. Civ. P. 1. In such cases, the experts provide their opinions under both parties' proposed constructions. InfoBionic's opposition to setting post-*Markman* Hearing dates is another attempt to inject further delay into this case, which has already been pending for three and half years.

2. **InfoBionic's Position**

The Court previously declined to adopt CardioNet's request to set post-*Markman* Hearing dates for expert discovery and dispositive motions. *Compare* Proposed Scheduling Order 5 [#21-1], *with* Scheduling Order 3 [#31]. It makes no sense for the parties to prepare expert reports and summary judgment motions without knowing the Court's claim constructions; this is wasteful and inefficient because it requires that the parties address all conceivable constructions, including those the Court will not adopt. The Court has recognized this, setting a post-*Markman* decision status conference to set a schedule for the post-*Markman* phase of the case. No. 1:15-cv-11803-IT [#321]. The Court should do the same again here.

A.
## II. EMAIL AND THIRD-PARTY DISCOVERY

**CardioNet's Position**

InfoBionic's assertion that CardioNet should be precluded from taking email or third party discovery in this case because it already took email and third party discovery in a different case—15-cv-11803-IT ("Related Action")—is unfounded. The Related Action involved

---

[11] CardioNet's proposed schedule provides nearly 5 months between the close of claim construction briefing (December 1, 2020) and opening expert reports (April 28, 2021).

different patents and, thus necessarily, different issues than in this case. CardioNet should be permitted to take discovery relevant to the issues in this case. To be sure, there are certain efficiencies that can be gained from discovery in the Related Action and the parties have accordingly already agreed to significantly limit discovery in this case, including limiting written discovery (*e.g.*, five interrogatories, five substantive requests for admission, one set of ten document requests per side) and fact depositions (*e.g.*, five total 30(b)(1) depositions per side). That does not mean, however, that CardioNet should be blocked from taking necessary discovery here.

InfoBionic's assertion that CardioNet should be precluded from obtaining email discovery in this case is unfounded. There has been no email discovery in this case. The Court never ruled upon the parties' email disputes raised in the original Joint Statement directed to the '207 patent. Indeed, InfoBionic did not produce emails in the Related Action until March 2019—many months *after* the Court granted InfoBionic's motion to dismiss (D.I. 55, dated October 16, 2018). The email search terms used in the Related Action did not include terms directed to the '207 patent. Accordingly, there was no occasion to obtain email discovery relevant to the specific technical issues related to the '207 patent asserted here.

CardioNet's addition of the provision for Third Party Discovery merely seeks to clarify three things: (i) that in addition to the parties' agreement that the parties may seek additional 30(b)(1) depositions of third parties who were deposed in the Related Action, the parties may also seek additional documents from third parties subpoenaed in the Related Action to account for the issues in this case; (ii) that the parties may seek 30(b)(6) depositions of third parties who were previously subpoenaed in the Related Action to account for the issues in this case; and (iii) that the parties may seek discovery from any other third parties who may be relevant to the

issues in this case. InfoBionic's claim that CardioNet is seeking "unbounded" third party discovery is incorrect. The parties have already agreed to be limited to five 30(b)(1) fact depositions per side, which includes depositions of third parties.

### B. InfoBionic's Position

In addition to CardioNet's proposal of post-*Markman* dates for expert discovery and summary judgment, CardioNet's proposed schedule contains two additional sections that were not included in this Court's original scheduling order and should not be included in this scheduling order, to the extent the Court decides to adopt CardioNet's schedule: (1) authorization to conduct email discovery from an additional five custodians (Section II, ¶ 7.a.); and (2) unbounded subpoenas to third parties, *including* third parties who were previously subpoenaed (Section II, ¶ 8).

First, the Court should reject CardioNet's renewed attempt to obtain email discovery from five custodians. CardioNet had argued for additional email discovery in its original Joint Statement, but the Court did not authorize such discovery. *Compare* Joint Statement 3-5 [#21], *with* Scheduling Order 4-5 [#31]. And after the Court's original scheduling order, InfoBionic voluntarily produced over 11,000 pages from over 1,600 additional emails, to address CardioNet's request for more email. No. 1:15-cv-11803-IT, Rives Decl. ¶¶ 8-10 [#353]. Additional email discovery is unjustified and will only increase burden and expense. CardioNet has identified no compelling reason why non-email discovery will not suffice, and CardioNet's request for email discovery threatens to swallow the strict limitations on discovery that the Court previously imposed at the parties' request in view of the extensive discovery the parties already have exchanged. At minimum, a party should be required to demonstrate good cause for email discovery, after reviewing non-email discovery.

Second, CardioNet's request to serve unbounded subpoenas on third parties, *including* third parties who were previously subpoenaed, is at odds with constraining discovery in this case to the limited additional discovery required to address the '207 patent. InfoBionic does not object to updating subpoenas sent to previously subpoenaed parties to address the '207 patent, but that is the only change that should be permitted.

Dated: August 7, 2020

By: /s/ Charles H. Sanders (with permission)
Charles H. Sanders (BBO #646740)
charles.sanders@lw.com
Christopher W. Henry (BBO #676033)
christopher.henry@lw.com
LATHAM & WATKINS LLP
John Hancock Tower, 27th Floor
200 Clarendon Street
Boston, MA 02116
Tel: (617) 948-0622; Fax: (617) 948-6001

Maximilian A. Grant (*pro hac vice*)
max.grant@lw.com
Gabriel K. Bell (*pro hac vice*)
gabriel.bell@lw.com
Diane E. Ghrist (*pro hac vice*)
diane.ghrist@lw.com
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Ste. 1000
Washington, DC 20004
Tel: (202) 637-2200; Fax: (202) 637-2201

Brenda L. Danek (*pro hac vice*)
brenda.danek@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Tel: (312) 876-7700; Fax: (312) 993-9767

*Counsel for Defendant InfoBionic, Inc.*

By: /s/ Bradford J. Badke
Bradford J. Badke (*pro hac vice*)
Ching-Lee Fukuda (*pro hac vice*)
Todd M. Simpson (*pro hac vice*)
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, NY 10019
(212) 839 5300

Jack Pirozzolo (BBO # 564879)
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
(617) 223 0300

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon the attorneys of record for each party via the Court's CM/ECF filing system.

/s/ Bradford J. Badke
Bradford J. Badke
