**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

CARDIONET, LLC,

    and

BRAEMAR MANUFACTURING, LLC,

    Plaintiffs,

        v.

INFOBIONIC, INC.,

    Defendant.

Civil Action No. 1:17-cv-10445-IT

Hon. Indira Talwani

**DEFENDANT INFOBIONIC, INC.'S OPPOSITION**
**TO PLAINTIFFS' MOTION FOR JUDGMENT ON THE PLEADINGS**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 3

III.    LEGAL STANDARDS ........................................................................................ 5

        A.      Judgment on the Pleadings........................................................................ 5

        B.      The Mandate Rule ..................................................................................... 6

IV.     THE COURT IS NOT BARRED FROM ADJUDICATING § 101 ................................ 7

        A.      The Mandate Rule Is Inapplicable ............................................................ 7

        B.      Even If The Mandate Rule Applied, Three Separate Exceptions
                Permit Adjudication Of § 101 ................................................................... 15

        C.      The Court Should Weigh The Merits Of § 101, And The Federal
                Circuit Can Review Its Mandate................................................................ 19

V.      CONCLUSION.................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
   No. 1:06-cv-11109, 2016 WL 10675906 (D. Mass. Apr. 25, 2016)........................................13

*Aponte-Torres v. Univ. of Puerto Rico*,
   445 F.3d 50 (1st Cir. 2006)................................................................................................8

*Arizona v. California*,
   460 U.S. 605 (1983)..........................................................................................................18

*Banks v. United States*,
   741 F.3d 1268 (Fed. Cir. 2014)......................................................................6, 12, 13, 18

*Big Baboon, Inc. v. SAP Am., Inc.*,
   No. 17-cv-02082, 2019 WL 5088784 (N.D. Cal. Sept. 9, 2019) ...............................1

*Cooper Tire & Rubber Co. v. Farese*,
   248 F. App'x 555 (5th Cir. 2007) ..................................................................................17

*De Jesus-Mangual v. Rodriguez*,
   383 F.3d 1 (1st Cir. 2004)...........................................................................................7, 16

*EcoServices, LLC v. Certified Aviation Servs., LLC*,
   No. 2019-1602, -- F. App'x --, 2020 WL 5949809 (Fed. Cir. Oct. 8, 2020)..................4, 8, 16

*Ellis v. United States*,
   313 F.3d 636 (1st Cir. 2002)......................................................................................2, 6, 15

*Exxon Chem. Patents, Inc. v. Lubrizol Corp.*,
   137 F.3d 1475 (Fed. Cir. 1998).................................................................................6, 14

*Fin. Res. Network, Inc. v. Brown & Brown, Inc.*,
   754 F. Supp. 2d 128 (D. Mass. 2010) .......................................................................9, 10

*Fisher v. Trainor*,
   242 F.3d 24 (1st Cir. 2001).............................................................................................8

*Haley v. City of Bos.*,
   657 F.3d 39 (1st Cir. 2011).............................................................................................5

*Harper v. Melendez*,
   No. 1:18-cv-12137, 2019 WL 6307201 (D. Mass. Nov. 22, 2019)............................5

*Jacked Up, L.L.C. v. Sara Lee Corp.*,
   807 F. App'x 344 (5th Cir. 2020) ...................................................................17, 18

*Laitram Corp. v. NEC Corp.*,
   115 F.3d 947 (Fed. Cir. 1997) ..............................................................................19

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................9

*McKenzie v. BellSouth Telecomms., Inc.*,
   219 F.3d 508 (6th Cir. 2000) ................................................................................17

*Metso Minerals Inc. v. Terex Corp.*,
   594 F. App'x 649 (Fed. Cir. 2014) .....................................................................6, 12

*Momenta Pharm., Inc. v. Teva Pharm. USA Inc.*,
   809 F.3d 610 (Fed. Cir. 2015) ....................................................................... *passim*

*Ms. S. v. Reg'l Sch. Unit 72*,
   916 F.3d 41 (1st Cir. 2019) ........................................................................... *passim*

*Mylant v. U.S.*,
   48 F. App'x 509 (6th Cir. 2002) ...........................................................................14

*Nalco Co. v. Chem-Mod, LLC*,
   883 F.3d 1337 (Fed. Cir. 2018) ..............................................................................8

*Ne. Utilities Serv. Co. v. F.E.R.C.*,
   55 F.3d 686 (1st Cir. 1995) .................................................................................6, 15

*Nkihtaqmikon v. Impson*,
   585 F.3d 495 (1st Cir. 2009) .................................................................................16

*Perez-Ruiz v. Crespo-Guillen*,
   25 F.3d 40 (1st Cir. 1994) ..................................................................................9, 10

*Retractable Techs., Inc. v. Becton Dickinson & Co.*,
   757 F.3d 1366 (Fed. Cir. 2014) ..........................................................................12, 13

*Shoshone Indian Tribe of Wind River Reservation Wyo. v. U.S.*,
   672 F.3d 1021 (Fed. Cir. 2012) ............................................................................12

*SOLIDFX, LLC v. Jeppensen Sanderson, Inc.*,
   No. 18-1082, 823 F. App'x 559, 2020 WL 4464449 (10th Cir. Aug. 4, 2020) ..............14, 15

*Tronzo v. Biomet, Inc.*,
   236 F.3d 1342 (Fed. Cir. 2001) ............................................................................16

*United States v. Bell*,
    988 F.2d 247 (1st Cir. 1993) ............................................................................6

*United States v. Bulger*,
    928 F. Supp. 2d 305 (D. Mass. 2013), *aff'd*, 816 F.3d 137 (1st Cir. 2016) ......................7, 19

*United States v. Cote*,
    51 F.3d 178 (9th Cir. 1995) ............................................................................14

*United States v. Rivera-Martinez*,
    931 F.2d 148 (1st Cir. 1991) ..............................................................6, 13, 17, 18

*United States v. Webb*,
    98 F.3d 585 (10th Cir. 1996) ......................................................................14, 15

*Zipperer v. Raytheon Co.*,
    493 F.3d 50 (1st Cir. 2007) ............................................................................5

**Federal Statutes**

35 U.S.C. § 101 ...................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 11(b) .....................................................................................1

Fed. R. Civ. P. 12(b)(6) ........................................................................... *passim*

## I.       INTRODUCTION

CardioNet's motion for judgment on the pleadings should be denied.  The Federal Circuit did not preclude this Court or a jury from adjudicating whether the asserted claims of U.S. Patent No. 7,941,207 ("the '207 patent") are ineligible under 35 U.S.C. § 101 based on a developed evidentiary record.  Instead, the Federal Circuit reversed the grant of InfoBionic's Rule 12(b)(6) motion to dismiss under § 101.  That ruling precluded revisiting patent ineligibility on the *pleadings*, but remanded for further proceedings—proceedings that necessarily include assessing patent ineligibility on a factual record.  CardioNet cannot foreclose this Court from considering evidence bearing on ineligibility by invoking the "mandate rule" to cement counter-factual inferences and assumptions drawn in CardioNet's favor at the pleadings stage.[1]

This Court's ruling on InfoBionic's Rule 12(b)(6) motion decision was, by definition, confined to the pleadings.  On appeal, CardioNet exploited the lack of a developed factual record to convince the Federal Circuit to draw inferences in its favor, stating in open court that "factual determinations" had to be made below about "what was done by doctors."  [#65, Maj. Op. at 19]. The Federal Circuit found that this Court "fail[ed] to draw all reasonable inferences in CardioNet's favor" because, in its view, at the pleading stage "[n]othing in the record in this case suggest[ed] that the claims merely computerize pre-existing techniques for diagnosing atrial

---

[1] CardioNet's counsel answered "yes" to the question "[w]as it not common to look at premature ventricular beats," and conceded in open court that "premature ventricular beats have been looked at in the past as some sort of arrhythmia."  [#103, IB SMF 76].  Given the *undisputed* conventionality of the sole claim element that was the basis for the Federal Circuit's reversal, one cannot reconcile CardioNet's argument—that this Court cannot rule on the undisputed factual record—with CardioNet's counsel's obligations as officers of the court.  Based on its admission, CardioNet is prosecuting a lawsuit for infringement of claims that it has admitted are conventional and therefore ineligible.  *Cf.* Fed. R. Civ. P. 11(b); *Big Baboon, Inc. v. SAP Am., Inc.*, No. 17-cv-02082, 2019 WL 5088784, at *6 (N.D. Cal. Sept. 9, 2019) (attorneys' fees awarded where patentee "litigated an invalid patent"), *R&R adopted*, 2019 WL 5102644, at *1 (N.D. Cal. Oct. 11, 2019), *aff'd*, 819 F. App'x 928 (Fed. Cir. Sept. 2, 2020) (per curiam).

fibrillation and atrial flutter." *Id.* at 16-18.  The Federal Circuit's reversal of the grant of

InfoBionic's Rule 12(b)(6) motion means that the Federal Circuit denied that motion and there

will be no § 101 dismissal *on the pleadings*.

The Federal Circuit remanded for further proceedings, which includes development of the

factual record on all issues—including patent ineligibility.  The record now contains ample

evidence that the claims merely computerize pre-existing techniques for diagnosing atrial

fibrillation and atrial flutter.  *See* InfoBionic's Motion for Summary Judgment of Invalidity

Under § 101 [##101–104].  The "mandate rule" does not authorize CardioNet to hide behind

favorable inferences drawn without evidence at the pleading stage, which are now belied by the

developed evidentiary record.

*First*, the mandate rule does not apply.  The rule only applies to issues that were actually

decided on appeal.  The Federal Circuit did not, and could not, decide what it identified as the

key unknown issue—whether "the claims are directed to automating known techniques."  [#65,

Maj. Op. at 16].  Instead, the Federal Circuit's ruling was premised on inferring that the claims

did not automate known techniques because there was no factual record "that doctors long used

the claimed diagnostic processes."  *Id.* at 17.

*Second*, even if the mandate rule applied (it does not), three separate exceptions to the

rule permit adjudication of § 101:  (i) the Federal Circuit's decision was "made on an 'inadequate

record,'" (ii) "significant new evidence" exists, and (iii) applying the mandate rule would result

in "manifest injustice."  *Ms. S. v. Reg'l Sch. Unit 72*, 916 F.3d 41, 48, 48 n.3 (1st Cir. 2019);

*Ellis v. United States*, 313 F.3d 636, 647-48 (1st Cir. 2002).

*Third*, the mandate rule is, at bottom, discretionary.  Because the Federal Circuit has

plenary power to review its mandate, the prudent and judicially efficient course for this Court is

to reach the case-dispositive merits of § 101 now (before expert discovery, pretrial, and trial) and provide the Federal Circuit with its decision based on the factual record. As this Court has recognized, the Federal Circuit can weigh the import of its earlier decision in due course. *See* [#104-1, Aug. 11, 2020 Hr'g Tr. 13:14-22]; [#104-15, Oct. 7, 2020 Hr'g Tr. 10:5-11:14].[2]

## II.    BACKGROUND[3]

In October 2018, the Court granted InfoBionic's motion to dismiss CardioNet's amended complaint under § 101.  [#55].  The Court held that the asserted '207 patent claims are directed to "the abstract idea of identifying AF by looking at the variability in time between heartbeats and taking into account ventricular beats" and failed to add an inventive concept. *Id.* at 6, 7-17. The Court considered, and rejected, CardioNet's arguments that the claim elements "solve [a] technical problem," finding that the claims "do not recite any specific implementation or improvement in computerized medical technology," and at most "'add generic calculations that humans can perform.'" *Id.* at 9, 15-17.

In April 2020, the Federal Circuit reversed and remanded for further proceedings.  [#65]. "[A]ccept[ing] th[e] statements [in the '207 patent specification] as true and consider[ing] them important," the majority found that this Court "fail[ed] to draw all reasonable inferences in CardioNet's favor" by "assum[ing] that the claims are directed to automating known

---

[2] CardioNet's attempt to avoid the merits of § 101 is brazenly hypocritical.  Just three days ago, CardioNet complained to the Federal Circuit that, in the parties' prior litigation, this Court's "abbreviated discussion" of the merits was a "results-oriented" decision "riddled with error." Ex. A, *CardioNet, LLC v. InfoBionic, Inc.*, Nos. 2020-2123, 2020-2150, Dkt. 14, Appellants' Br. at 35, 69 (Fed. Cir. Oct. 19, 2020).  CardioNet's counsel find error wherever it suits them.

[3] Detailed descriptions of the '207 patent and this case's procedural history are set out in InfoBionic's summary judgment papers. *See* [#102 § II (The '207 Patent), § III (Procedural History); #103 at 2-9].  Only certain facts are repeated here, as InfoBionic understands that the Court "anticipate[s] … delv[ing] into the [parties'] two [§ 101 motions] at the same time." [#104-15, Oct. 7, 2020 Hr'g Tr. 10:20-23].

techniques."  [#65, Maj. Op. at 15-16, 18].  In the majority's view, "[n]othing in the record …

suggest[ed] that the claims merely computerize pre-existing techniques for diagnosing atrial

fibrillation and atrial flutter," *id.* at 16, and "there [wa]s no record evidence undermining the

statements in the written description," *id.* at 17.  *See also id.* ("[N]othing in the record supports

the district court's fact finding (and InfoBionic's assertion) that doctors long used the claimed

diagnostic processes.").  The majority noted that CardioNet repeatedly pressed the existence of

pertinent factual disputes.  *Id.* at 19.  CardioNet emphasized "the absence of prior art or expert

testimony in the record" and stated in open court:  "There are factual determinations that need to

be made here on what was done by doctors."  *Id.*

In Part II.C of its opinion, the majority declined to remand for further *pleading-stage*

proceedings.  *Id.* at 18-19.  As CardioNet emphasizes, the Federal Circuit determined that

"remand [wa]s unnecessary" because it could resolve the "***Alice step one issue at the Rule***

***12(b)(6) stage without remanding***," reversing this Court's grant of InfoBionic's Rule 12(b)(6)

motion, *i.e.*, ruling that the motion was denied.  [#96 at 4 (quoting [#65, Maj. Op. at 18-19])

(CardioNet's emphasis)].

Judge Dyk concurred in the result, agreeing that the record on appeal did not show that

"the claims are drawn to automating basic diagnostic processes," but he dissented from the

majority's "confusing dicta in Part II.C of [its] opinion."  [#65, Dis. Op. at 3-4].  Judge Dyk

recently reiterated that, in CardioNet's appeal, "***[t]he parties' focus was almost entirely on***

***whether the existing record shown the claimed process was a longstanding practice***," and

based on that record, "[t]he panel found that the defendant did not establish that 'doctors long

used the claimed diagnostic processes'" because "'***[n]othing in the record** ... suggest[ed] that the*

claims merely computerize[d] pre-existing techniques.'"  *EcoServices, LLC v. Certified Aviation*

*Servs., LLC*, No. 2019-1602, -- F. App'x --, 2020 WL 5949809, at *18 n.4 (Fed. Cir. Oct. 8, 2020) (Dyk, J., dissenting-in-part).[4]

In May 2020, InfoBionic filed for panel rehearing, requesting clarification that this Court would have discretion to consider additional § 101-related evidence on remand. [#71-4]. On June 4, that petition was denied ([#71-5]), "without any explanation," as this Court recognized. [#104-1, Aug. 11, 2020 Hr'g Tr. 12:14]. The mandate issued on June 11. [#68].

On October 2, 2020, the parties requested the Court's guidance on § 101 briefing. [#104-14]. During an October 7 teleconference, the Court instructed that CardioNet could proceed with a motion for judgment on the pleadings, and InfoBionic could move for summary judgment. [#104-15, Oct. 7, 2020 Hr'g Tr. 10:20-11:14].

On October 8, CardioNet filed its motion for judgment on the pleadings. [##95, 96].

## III.   LEGAL STANDARDS

### A.   Judgment on the Pleadings

"Judgment on the pleadings is proper only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." *Zipperer v. Raytheon Co.*, 493 F.3d 50, 53 (1st Cir. 2007). The Court must view facts contained in the pleadings "in the light most favorable to the nonmovant and draw all reasonable inferences in [the nonmovant's] favor." *Id.* Thus, a motion for judgment on the pleadings is "much like a Rule 12(b)(6) motion to dismiss," except it is filed after the pleadings close. *Harper v. Melendez*, No. 1:18-cv-12137, 2019 WL 6307201, at *1 (D. Mass. Nov. 22, 2019). In addressing such a motion, the court may consider "documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." *Haley v. City of*

---

[4] Unless otherwise noted, emphasis is added and internal citations and quotations are omitted.

*Bos.*, 657 F.3d 39, 46 (1st Cir. 2011).

### B.     The Mandate Rule

The "mandate rule" is "a specific application of the law of the case doctrine" and "prohibits a trial court from reopening issues decided by an earlier appellate ruling in the same case." *Ne. Utilities Serv. Co. v. F.E.R.C.*, 55 F.3d 686, 688 (1st Cir. 1995) ("*NUSCO*") (quoting *United States v. Bell*, 988 F.2d 247, 251 (1st Cir. 1993)); *Ms. S.*, 916 F.3d at 47; *see also Banks v. United States*, 741 F.3d 1268, 1276 (Fed. Cir. 2014) ("mandate rule[] encompassed by the broader law-of-the-case doctrine").  To apply the mandate rule, an issue "must have been actually considered and decided by the appellate court." *Ms. S.*, 916 F.3d at 47; *see also Momenta Pharm., Inc. v. Teva Pharm. USA Inc.*, 809 F.3d 610, 619 (Fed. Cir. 2015) ("For the doctrine to apply, the issue must have actually been decided."); *Metso Minerals Inc. v. Terex Corp.*, 594 F. App'x 649, 651 (Fed. Cir. 2014) (mandate rule "coterminous with the scope of the issues deemed presented to the court on appeal"); *Exxon Chem. Patents, Inc. v. Lubrizol Corp.*, 137 F.3d 1475, 1478 (Fed. Cir. 1998) ("mandate governs only that which was actually decided").

The mandate rule is not "designed to function as a straitjacket."  *NUSCO*, 55 F.3d at 688.  Rather, the rule is a "discretion-guiding principle[] … subject to exceptions in the interests of justice."  *Id.*  "Decisions made on an 'inadequate record or ... designed to be preliminary or tentative' are excepted" from application of the mandate rule.  *Ms. S.*, 916 F.3d at 48.  Exceptions to the mandate rule also are made for "significant new evidence," and "to avoid manifest injustice."  *Id.* at 48, 48 n.3; *Ellis v. United States*, 313 F.3d 636, 648 (1st Cir. 2002); *see also, e.g.*, *United States v. Rivera-Martinez*, 931 F.2d 148, 150-51 (1st Cir. 1991) ("law of the case doctrine is neither an absolute bar to reconsideration nor a limitation on a federal court's power," and exceptions are made for "substantially different evidence" and to avoid "manifest

injustice"). Even if none of those exceptions applies, the Court has discretion to decide whether or not to apply the mandate rule and may "address[] [an] issue anew." *United States v. Bulger*, 928 F. Supp. 2d 305, 317 (D. Mass. 2013), *aff'd*, 816 F.3d 137 (1st Cir. 2016); *cf. Momenta Pharm.*, 809 F.3d at 619 ("[I]t is clear that all federal courts retain power to reconsider if they wish.").

## IV.   THE COURT IS NOT BARRED FROM ADJUDICATING § 101

The Court should deny CardioNet's motion—and grant InfoBionic's motion for summary judgment on § 101 ([#101])—for three reasons. First, the mandate rule is inapplicable. Second, even if the rule applied, three separate exceptions to application of the mandate rule would also apply, permitting this Court to adjudicate § 101 on the merits. Third, the prudent course for this Court is to reach the case-dispositive merits of § 101 and allow the Federal Circuit to weigh the import of its mandate in due course, with the benefit of this Court's decision on a developed factual record.

### A.   The Mandate Rule Is Inapplicable

The mandate rule does not apply because the Federal Circuit did not actually consider or decide the issue that the Federal Circuit identified as critical to resolving whether the asserted claims are directed to an abstract idea—whether "the claims are directed to automating known techniques" because "doctors long used the claimed diagnostic processes." [#65, Maj. Op. at 16-17]. The mandate rule only applies to issues that were "actually considered and decided," but the Federal Circuit did not—and could not—actually consider or decide this issue because no record had yet been developed regarding whether the claims are directed to automating known techniques doctors long performed. *Ms. S.*, 916 F.3d at 47; *see also, e.g.*, *Momenta Pharm.*, 809 F.3d at 619 ("For the doctrine to apply, the issue must have actually been decided."); *De Jesus-Mangual v. Rodriguez*, 383 F.3d 1, 6-7 (1st Cir. 2004) ("[I]ssues that were not decided by the

appellate court and that are thus outside the scope of the mandate are not affected by the mandate."). Thus, just as "an initial denial of summary judgment does not foreclose, as the law of the case, a subsequent grant of summary judgment on an amplified record," the Federal Circuit's denial of InfoBionic's Rule 12(b)(6) motion does not foreclose this Court's grant of summary judgment on a developed factual record. *Fisher v. Trainor*, 242 F.3d 24, 29 n.5 (1st Cir. 2001); *see also Momenta Pharm.*, 809 F.3d at 619 ("[f]indings of fact and fact-intensive conclusions of law" in preliminary injunction "are not binding").

Rather than actually consider and decide whether the claims automate diagnostic processes that doctors long performed, the Federal Circuit premised its decision on drawing inferences in CardioNet's favor because the appeal arose at the pleading stage, without a factual record. As Judge Dyk later explained, "[t]he parties' focus was almost entirely on whether the **existing record** showed the claimed process was a longstanding practice." *EcoServices*, 2020 WL 5949809, at *18 n.4 (Dyk, J., dissenting-in-part). Because "nothing in the [pleading-stage] record" demonstrated that doctors long practiced the diagnostic processes at issue, the Federal Circuit had to *assume*, in CardioNet's favor, that doctors had not done so. [#65, Maj. Op. at 16-17]. The Federal Circuit made this assumption because, on a motion to dismiss, courts (trial or appellate) must *assume* facts in the non-movant's favor, but they do not (and cannot) *find* disputed facts in the non-movant's favor. *See, e.g.*, *Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1347, 1349 (Fed. Cir. 2018) (resolution of a factual dispute is "inappropriate at the Rule 12(b)(6) stage"); *Aponte-Torres v. Univ. of Puerto Rico*, 445 F.3d 50, 54 (1st Cir. 2006) ("Rule 12(b)(6) … does not allow for any resolution of contested facts.").

There was no opportunity for the Federal Circuit to actually consider or decide whether evidence **outside** the limited, pleading-stage record on appeal showed that the claims were

directed to a longstanding practice.  Accordingly, the Federal Circuit's reversal of this Court's

grant of InfoBionic's Rule 12(b)(6) motion is an interlocutory order that amounts to the *denial of*

*a motion to dismiss*, which only forecloses this Court from revisiting patent ineligibility *on the*

*pleadings* but permits further consideration of this issue on an amplified record, e.g., at summary

judgment or trial.  *See, e.g.*, *Fin. Res. Network, Inc. v. Brown & Brown, Inc.*, 754 F. Supp. 2d

128, 155 (D. Mass. 2010) (holding that "an initial denial of a motion to dismiss" and the law of

the case doctrine do not bar consideration of a summary judgment motion, emphasizing "'the

very nature of the difference between a ruling on the pleadings and … an order granting

summary judgment,'" which requires "'an examination of the record'") (quoting 18B Charles

Alan Wright, Arthur R. Miller & Edward H. Cooper, FEDERAL PRACTICE AND PROCEDURE

§ 4478.1 (2nd ed.)).  Indeed, it is well recognized that assumptions and inferences drawn in a

party's favor on a motion to dismiss may be proven untrue by evidence and cannot be used to

avoid summary judgment:

> A motion to dismiss addresses the plausibility of the claims in the complaint and
> assumes facts therein as true whereas a motion for summary judgment addresses
> whether genuine issues of material fact exist to support the claims.  A different
> factual record and a different standard of review govern summary judgment
> motions.

*Fin. Res. Network*, 754 F. Supp. 2d at 155; *see also, e.g.*, *Lujan v. Defenders of Wildlife*, 504

U.S. 555, 561 (1992) ("general factual allegations" might suffice "[a]t the pleadings stage," but

not "[i]n response to a summary judgment motion"); *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40,

42 (1st Cir. 1994) ("[D]enials of motions to dismiss … remain open to trial court

reconsideration.").

The Federal Circuit's decision did not—and could not—purport to depart from these

bedrock principles.[5]  CardioNet emphasizes that the Federal Circuit majority wrote, "We conclude that a remand is unnecessary."  [#96 at 6 (citing #65, Maj. Op. at 19)].  In arguing that this statement reflects a clear decision not to remand on patent ineligibility, CardioNet fails to acknowledge the context:  this was the majority's answer to the question of whether it could "resolve this *Alice* step one issue **at the Rule 12(b)(6)** stage without remanding" [#65, Maj. Op. at 18], i.e., without remanding for further *pleading-stage* proceedings.  CardioNet also fails to note that the Federal Circuit's decision was explicitly "[b]ased on [its] review of [only] the intrinsic record" of the '207 patent.  *Id.* at 23.  That was the limited evidence available on appeal because the appeal arose on grant of InfoBionic's Rule 12(b)(6) motion to dismiss, before evidence beyond the intrinsic record could be developed or considered.  Regardless, the "majority's inclusion of confusing dicta in Part II.C of the opinion" cannot alter the fact that the Federal Circuit did not (and could not) actually consider or decide whether evidence outside the pleadings establishes that the claims automate a longstanding practice.  *Id.* at 27 (Dyk, J., dissenting-in-part and concurring in the result).

Indeed, CardioNet exploited the procedural posture of the appeal to avoid affirmance. When pressed at oral argument, CardioNet's counsel conceded (despite repeated efforts to avoid doing so) that doctors commonly distinguished PVCs in diagnosing AF, but retreated to the lack of record evidence on this incontrovertible point:

---

[5] CardioNet criticizes InfoBionic's citation of *Perez-Ruiz*, contending the case addresses interlocutory orders and does not address "non-interlocutory orders (i.e., the Court's dismissal of the case under § 101)" or "reconsideration after an appellate decision."  [#96 at 8].  However, as discussed, the Federal Circuit's decision "revers[ing]" and "remand[ing] for further proceedings" ([#65, Maj. Op. at 23]) amounts to the denial of a motion to dismiss, which "remain[s] open to trial court reconsideration," as *Perez-Ruiz* states.  25 F.3d at 42; *see also Fin. Res. Network, Inc.*, 754 F. Supp. 2d at 155 ("Taking into account the policies underlying the law of the case doctrine and in light of the preliminary and interlocutory ruling made on the motion to dismiss, the law of the case does not foreclose addressing the [issue addressed earlier] on summary judgment.").

> CardioNet's counsel: … There was a general understanding, as the patent had set forward, that premature ventricular beats is generally seen as being irrelevant to atrial fibrillation. But what this invention does is says, no, you need to look at the premature ventricular beats.
>
> Judge Dyk: It was common to look at the premature ventricular beats, right?
>
> CardioNet's counsel: There is no evidence of that, Your Honor.
>
> Judge Dyk: Well, isn't that the case?
>
> CardioNet's counsel: What we have to do is we have to look at what the record puts forward. Now…
>
> Judge Dyk: Wait a minute. ***Answer my question.*** I'm trying… ***Was it not common to look at premature ventricular beats***, maybe not in the way that the dependent claims here describe, but it was common to do that, right?
>
> CardioNet's counsel: Whether premature ventricular beats have been looked at in the past as some sort of arrhythmia, ***yes, Your Honor***.
>
> Judge Stoll: But, wait, just for a second. ***Is there any record evidence to show that?*** For example, the district court says multiple times that this is simply a technique that doctors have used for ages. Do you know of any evidence to support that?
>
> CardioNet's counsel: ***There is no such evidence whatsoever put forward in front of the district court.*** All we have here are InfoBionic's attorney arguments—conclusory arguments, unsupported by evidence—that this is what doctors do.

[#103, IB SMF 76]. Relying on the fact that the record lacked evidence that doctors had commonly looked at premature ventricular beats in diagnosing atrial fibrillation and atrial flutter—even though CardioNet conceded such evidence existed—CardioNet avoided affirmance by arguing, "There are factual determinations that need to be made here on what was done by doctors." [#65, Maj. Op. at 19, Dis. Op. at 5].[6]

Having told the Federal Circuit panel that factual determinations need to be made by the trial court, CardioNet now contends that this Court is precluded from considering any additional facts or determining how they affect patent ineligibility. That is unsurprising because CardioNet knows, as CardioNet admitted when pressed on appeal, that those facts are unfavorable to

---

[6] CardioNet contends that InfoBionic "mischaracterize[s]" the arguments its counsel made on appeal. [#96 at 8]. The Court can evaluate CardioNet's statements for itself.

CardioNet's litigation strategy. But the mandate rule does not authorize such "gotcha" litigation tactics. InfoBionic "is not seeking to relitigate an issue that was already conclusively decided" because the factual issue of whether the claims are directed to a longstanding practice was not, and could not be, actually considered and decided on appeal. *Momenta Pharm.*, 809 F.3d at 620. The mandate rule therefore does not apply. *See id.*; *see also, e.g.*, *Ms. S.*, 916 F.3d at 47 (refusing to apply the mandate rule to an issue not reached on an earlier appeal); *Metso Minerals*, 594 F. App'x at 651-52 ("[I]t would be incorrect to conclude that the court's mandate encompassed an issue that was not presented to the court.")

None of CardioNet's cases support applying the mandate rule to preclude this Court from evaluating patent ineligibility on a developed factual record. In *Banks*, the Federal Circuit found that the mandate rule applied to an earlier decision addressing a Rule 12(b)(1) motion because that decision was grounded in a "***well-developed evidentiary record***," including "anticipated trial exhibits … filed in accordance with the pre-trial scheduling order," and did ***not*** rest on assumptions drawn in accordance with Rule 12(b)(6). 741 F.3d at 1274, 1277-79; *see also id.* at 1278 ("It is simply inaccurate to claim that the factual allegations of the Complaint were taken as true by either court.").[7] CardioNet does not, and cannot, contend that the Federal Circuit's earlier decision in this case was based on anything other than the pleadings. The Federal Circuit relied on statements in the '207 patent's written description because "there [wa]s no record evidence undermining" them. [#65, Maj. Op. at 17]. In *Retractable Techs., Inc. v. Becton Dickinson & Co.*, the mandate rule applied to a Federal Circuit decision reversing-in-part and affirming-in-part ***a final judgment following a jury trial***, where "***no*** remand was ordered" and

---

[7] Jurisdictional allegations are not presumed true on a Rule 12(b)(1) motion. *Shoshone Indian Tribe of Wind River Reservation Wyo. v. U.S.*, 672 F.3d 1021, 1030 (Fed. Cir. 2012).

there was *no* "substantial change in the evidence."  757 F.3d 1366, 1369-73 (Fed. Cir. 2014).

Like *Banks*, *Retractable* thus does nothing to support application of the mandate rule where the

appellate court's earlier decision was not based on the full evidentiary record.

In *Rivera-Martinez*, the First Circuit ruled it was improper for the district court to

"thr[o]w the gates wide open" and "undertak[e] plenary reconsideration" of a criminal

defendant's plea-withdrawal motion because the First Circuit had provided a "tightly

circumscribed set of directions" in remanding "*for the sole purpose*" of litigating the defendant's

competency.  931 F.2d at 150 (emphasis original).  Beyond reversing the grant of InfoBionic's

Rule 12(b)(6) motion, the Federal Circuit did not provide any "directions" circumscribing this

Court's ability to consider all issues on a developed evidentiary record.  *Id.*  In *Akamai Techs.,*

*Inc. v. Limelight Networks, Inc.*, a "jury found that [the defendant] failed to prove invalidity," a

"final judgment provide[d] that the asserted claims … 'are not invalid on any of the grounds

stated in 35 U.S.C. §§ 101, 102, 103 or 112,'" and the defendant "*did not raise validity in [a]*

*cross-appeal* of that judgment."  No. 1:06-cv-11109, 2016 WL 10675906, at *2 (D. Mass. Apr.

25, 2016).  Under those circumstances, after "the jury's validity finding was incorporated into

the Federal Circuit's mandate," this Court found that validity could not be re-litigated.  *Id.*  Here,

unlike in *Akamai*, InfoBionic did not forfeit its ability to pursue any issue on remand due to any

failure to appeal; InfoBionic could not cross appeal from the judgment granting its Rule 12(b)(6)

motion to dismiss.

CardioNet argues that "InfoBionic itself recognized that the Federal Circuit did not

remand the eligibility issue," citing InfoBionic's rehearing petition seeking clarification.  [#96 at

7].  That is not true.  InfoBionic wrote in its petition that "the panel declined to remand for

further development *at the pleading stage*," but that "should not (and could not coherently) be

read as preventing the district court from considering … evidence and revisiting the § 101 issue at later stages."  [#71-4 at 2].

Regardless, the order denying InfoBionic's rehearing petition issued "without any explanation," as this Court recognized ([#104-1, Aug. 11, 2020 Hr'g Tr. 12:14]), and the Federal Circuit's "silence with respect to [InfoBionic]'s clarification request … does ***not*** carry a presumption of rejection on the merits." *Exxon*, 137 F.3d at 1479.  Indeed, "it would be a mistake to conclude that a court's non-response to an argument made in a rehearing petition necessarily means that the court has rejected that argument." *Id.*  The "failure to grant [the] request for clarification could well reflect the view that clarification was not required, rather than an intention to reject on the merits the legal argument on which [InfoBionic] sought clarification." *Id.*; *see also United States v. Cote*, 51 F.3d 178, 181 (9th Cir. 1995) ("The summary denial of the petition does not indicate the court considered and decided the issue presented…. [A] summary denial of rehearing en banc is insufficient to confer any implication or inference regarding the court's opinion relative to the merits of a case"); *Mylant v. U.S.*, 48 F. App'x 509, 513 (6th Cir. 2002) ("As to the cited effect of our denial of the government's petition for clarification, that summary ruling lacks any precedential or inferential value.").

Rather than acknowledge the Federal Circuit's controlling precedent in *Exxon*, CardioNet relies on Tenth Circuit decisions that do not control here.  [#96 (citing *SOLIDFX, LLC v. Jeppensen Sanderson, Inc.*, No. 18-1082, 823 F. App'x 559, 2020 WL 4464449 (10th Cir. Aug. 4, 2020), and *United States v. Webb*, 98 F.3d 585 (10th Cir. 1996)].  In addition, unlike here, the Tenth Circuit had issued opinions squarely addressing, and rejecting, the issues raised in the rehearing petitions.  *See SOLIDFX*, 2020 WL 4464449, at *7 ("[T]here can be no question that this court in *SOLIDFX I* heard, considered, and rejected SOLIDFX's argument.  This court's

instructions left no room for the district court to consider the same … argument that this court rejected."); *United States v. Webb*, 98 F.3d at 588 ("[T]he 'combination theory'" raised in the petition for rehearing was already "implicitly rejected by the *Web I* panel" because "*Web I* specifically addressed and rejected each of the three factors."). *SOLIDFX* and *Webb* are inapposite.

Contrary to CardioNet's contention, the mandate rule does not apply here.

## B.   Even If The Mandate Rule Applied, Three Separate Exceptions Permit Adjudication Of § 101

Even if the mandate rule applied (it does not), the Court should adjudicate patent ineligibility under § 101 because three separate exceptions to that rule would also apply.  The law of the case doctrine and the mandate rule are not "an inflexible straitjacket that invariably requires rigid compliance with the terms of the mandate"; rather they are "discretion-guiding principles … subject to exceptions in the interests of justice." *NUSCO*, 55 F.3d at 688.  Three recognized exceptions to the mandate rule independently apply here and, taken together, amply demonstrate that application of the mandate rule would not be "in the interests of justice." *Id.*

First, "[d]ecisions made on an '***inadequate record*** or … designed to be preliminary or tentative' are excepted from the law of the case doctrine." *Ms. S.*, 916 F.3d at 48 (quoting *Ellis*, 313 F.3d at 647).  "Everything the panel majority said in [CardioNet's appeal] was provisioned on the 'insufficient' record in that … appeal." *Ms. S.*, 916 F.3d at 48.  The Federal Circuit repeatedly cited the insufficiency of the limited pleading-stage record as the basis for its decision:

- "Nothing in the record in this case suggests that the claims merely computerize pre-existing techniques for diagnosing atrial fibrillation and atrial flutter."
- "Indeed, as discussed above, nothing in the record supports the district court's fact finding (and InfoBionic's assertion) that doctors long used the claimed diagnostic processes."

- "Here, there is no record evidence undermining the statements in the written description concerning the benefits of the claimed device."

[#65, Maj. Op. at 16-17]; *see also EcoServices*, 2020 WL 5949809, at *18 n.4 ("The parties' focus [in *CardioNet*] was almost entirely on whether the existing record showed the claimed process was a longstanding practice," and "[t]he panel found that the defendant did not establish that 'doctors long used the claimed diagnostic processes'" because "'[n]othing in the record ... suggest[ed] that the claims merely computerize[d] pre-existing techniques.'").  Because the Federal Circuit's decision was a preliminary one based on an undeveloped, pleading-stage record, its decision would be "excepted" from application of the mandate rule.  *See, e.g.*, *Ms. S.*, 916 F.3d at 48.  CardioNet ignores this dispositive exception in its motion.  [#96 at 7-8].

Second, InfoBionic has presented "significant new evidence" not adduced in the earlier proceedings, which were confined to the pleadings.  *See Ms. S.*, 916 F.3d at 48 n.4 ("Relevant changes … in the facts … reinforce our conclusion that reconsideration is proper.") (citing *Nkihtaqmikon v. Impson*, 585 F.3d 495, 498 (1st Cir. 2009) ("We could revisit our own earlier decision if [the appellant] could … proffer significant new evidence")); *see also Tronzo v. Biomet, Inc.*, 236 F.3d 1342, 1349 (Fed. Cir. 2001) ("[C]ourts have considered revisiting issues otherwise foreclosed in circumstances where there has been a substantial change in the evidence."); *De Jesus-Mangual*, 383 F.3d at 6 (mandate rule did not preclude consideration of an issue where "the initial case was dismissed … prior to any significant discovery, [and] plaintiffs were not given the opportunity to develop the evidentiary record with respect to [that issue]").  The key question for § 101—whether doctors long distinguished PVCs in diagnosing AF—has now been answered in the affirmative by significant new evidence, including Dr. Akar's declaration and the references cited therein.  *See* InfoBionic's Motion for Summary Judgment of Invalidity Under § 101 [##101-104]; *see also, e.g.*, [#85-16, Zurro, *Detection of Atrial Persistent*

16

*Rhythm Based on P-wave Recognition and RR Interval Variability*, Computers in Cardiology, IEEE, 185-88, 185 (1995) ("[A]berrant beats [that] are frequent with atrial fibrillation … should be detected and distinguished from premature ventricular beats.")].  For this additional independent reason, an exception to the mandate rule would apply.

CardioNet admits that a "'holding on a motion to dismiss'"—including an appellate court's holding—"'does ***not*** establish the law of the case for purposes of summary judgment, ***when the complaint has been supplemented by discovery***.'"  [#96 at 9 (quoting *McKenzie v. BellSouth Telecomms., Inc.*, 219 F.3d 508, 513 (6th Cir. 2000)].  CardioNet nevertheless contends that this exception does not apply "when a trial court gratuitously jettisons the [mandate] rule in order to address to an issue explicitly decided, and foreclosed, in an earlier appeal."  *Rivera-Martinez*, 931 F.2d at 151 (quoted in part at [#96 at 9]).  InfoBionic does not ask this Court to "gratuitously jettison" the mandate rule, *id.*, but rather to consider the developed evidentiary record on the sole issue that the Federal Circuit identified as critical to deciding the patent ineligibility issue—whether "the claims are directed to automating known techniques." [#65, Maj. Op. at 16].

CardioNet's cases refusing to apply this exception to the mandate rule are inapposite.  In *Cooper Tire & Rubber Co. v. Farese*, the party seeking to avoid application of the mandate rule, unlike InfoBionic, "never argue[d] that one of the exceptions to the law of the case doctrine applie[d]," and had an opportunity to develop the record, unlike here where there was "no opportunity in the prior proceeding to adduce [] evidence" at the motion to dismiss stage.  248 F. App'x 555, 557-59 & n.1 (5th Cir. 2007).  In *Jacked Up, L.L.C. v. Sara Lee Corp.*, the Fifth Circuit approved a "district court['s] refus[al] to consider … additional evidence" that a party submitted in trying to avoid summary judgment on remand because that party already had the

opportunity to submit evidence in opposition to summary judgment, and the Fifth Circuit had remanded with "specific and explicit instructions" only to consider the admissibility of certain previously-submitted evidence. 807 F. App'x 344, 347, 350 (5th Cir. 2020); *see also supra* Sec. IV.A at 12-13 (addressing *Banks* and *Rivera-Martinez*). In contrast, InfoBionic could not have submitted—and neither this Court nor the Federal Circuit could have evaluated—evidence outside the pleadings in considering InfoBionic's Rule 12(b)(6) motion.

Third, the Court may depart from a prior holding if convinced that it "'would work a manifest injustice.'" *Momenta Pharm.*, 809 F.3d at 620 (quoting *Arizona v. California*, 460 U.S. 605, 618 n.8 (1983)). CardioNet argues that "InfoBionic cannot show that the Federal Circuit's decision is clearly erroneous and would work a manifest injustice" because "[r]aising doubts about the correctness of the Federal Circuit's ruling cannot establish clear error." [#96 at 8]. But CardioNet misses the point. The pertinent question is not whether the Federal Circuit correctly weighed, or clearly erred in its evaluation of, evidence regarding whether the claims automate a longstanding practice. The Federal Circuit did not have that evidence to consider. Rather, the question is whether it would be manifestly unjust to preclude this Court from considering the record evidence that belies the counter-factual inferences and assumptions drawn in CardioNet's favor on appeal—at CardioNet's urging—due to the lack of record evidence. The answer is "yes." It would be manifestly unjust to permit CardioNet to avoid confronting the very evidence of patent ineligibility that CardioNet convinced the Federal Circuit was needed and that CardioNet admitted existed. *See supra* note 1.

The mandate rule does not authorize CardioNet's gamesmanship. Having successfully argued it was entitled to favorable (unsupported) assumptions at the pleadings stage because "[t]here are factual determinations that need to be made here on what was done by doctors,"

18

CardioNet cannot now prevent this Court from evaluating the evidence of what doctors had long done. [#65, Maj. Op. at 19]. Accepting CardioNet's view that the developed factual record cannot be assessed by this (or any) court—even though unrebutted evidence now conclusively refutes the key facts assumed in CardioNet's favor at the pleading stage (*see* [#102 at 9-18])— would be manifestly unjust. *See, e.g.*, *Momenta Pharm.*, 809 F.3d at 620-21 (refusing to apply the mandate rule where doing so would be manifestly unjust in view of the "record developed by all parties after" the earlier decision). This is a third, independent reason to reject CardioNet's invocation of the mandate rule.

### C. The Court Should Weigh The Merits Of § 101, And The Federal Circuit Can Review Its Mandate

Even if the Court were to find (i) the mandate rule applies (it does not), and (ii) no exceptions permit reconsideration of § 101 (three do), the Court should still, "in its discretion, address[] this issue anew." *Bulger*, 928 F. Supp. 2d at 317; *see also Momenta Pharm.*, 809 F.3d at 619 ("[I]t is clear that all federal courts retain power to reconsider if they wish"). Because the Federal Circuit has "plenary power" to review its mandate, *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 950-51 (Fed. Cir. 1997), the prudent course is for this Court to reach the case-dispositive merits of § 101 with a complete evidentiary record for review on any subsequent appeal. As this Court recognized, the Federal Circuit then can weigh the import of its earlier decision in due course.[8]

---

[8] *See* [#104-1, Aug. 11, 2020 Hr'g Tr. 13:14-22 (THE COURT: "[I]f … the [F]ederal [C]ircuit did not intend to have the issue raised again on summary judgment, that will be clear…. [I]f I find the same thing, they will affirm me, and if I find the reverse, they will reverse me.")]; [#104-15, Oct. 7, 2020 Hr'g Tr. 10:5-11:14 (THE COURT: "[A]t the end of the day, [the Federal Circuit] … know[s] what [it] said, and [it] will know what [it] said better than I do…. I will delve into the [parties'] two [§ 101 motions] at the same time … and whichever way I go, … the [F]ederal [C]ircuit can tell me that's the right thing to have done or the wrong thing to have done, but you'll have some resolution of these issues at that point and not have to come back and forth.")].

## V.     CONCLUSION

InfoBionic respectfully requests that the Court deny CardioNet's motion for judgment on

the pleadings and grant any other relief the Court deems just.


Dated:  October 22, 2020                    Respectfully submitted,

                                            /s/ Charles H. Sanders
                                            Charles H. Sanders (BBO #646740)
                                            Christopher W. Henry (BBO #676033)
                                            LATHAM & WATKINS LLP
                                            John Hancock Tower, 27th Floor
                                            200 Clarendon Street
                                            Boston, MA 02116
                                            Telephone: (617) 948-6000
                                            Facsimile: (617) 948-6001
                                            charles.sanders@lw.com
                                            christopher.henry@lw.com

                                            Maximilian A. Grant (*pro hac vice*)
                                            Gabriel K. Bell (*pro hac vice*)
                                            Diane E. Ghrist (*pro hac vice*)
                                            LATHAM & WATKINS LLP
                                            555 Eleventh Street, N.W., Ste. 1000
                                            Washington, DC 20004
                                            Telephone: (202) 637-2200
                                            Facsimile: (202) 637-2201
                                            max.grant@lw.com
                                            gabriel.bell@lw.com
                                            diane.ghrist@lw.com

                                            *Counsel for Defendant InfoBionic, Inc.*


## CERTIFICATE OF SERVICE

I hereby certify that on October 22, 2020, the foregoing document, which was filed with
the Court through the CM/ECF system, will be sent electronically to all registered participants as
identified on the Notice of Electronic Filing ("NEF), and paper copies will be sent to those
identified as non-registered participants.

                                            /s/ Charles H. Sanders
                                            Charles H. Sanders