UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CARDIONET, LLC, <br><br> and <br><br> BRAEMAR MANUFACTURING, LLC, <br><br> Plaintiffs, <br><br> v. <br><br> INFOBIONIC, INC., <br><br> Defendant. | Civil Action No. 1:17-cv-10445-IT <br><br> Hon. Indira Talwani |

**DEFENDANT INFOBIONIC INC.'S REPLY IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT OF INVALIDITY UNDER 35 U.S.C. § 101**

## TABLE OF CONTENTS

| | | |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | THE UNDISPUTED RECORD ESTABLISHES INELIGIBILITY UNDER § 101 | 2 |
| III. | CARDIONET'S INVOCATION OF RULE 56(D) SHOULD BE REJECTED | 3 |
| IV. | THE FEDERAL CIRCUIT'S DECISION DOES NOT SUPPORT DENYING SUMMARY JUDGMENT | 7 |
| V. | CLAIM CONSTRUCTION IS NOT A BAR TO ADJUDICATION OF § 101 | 9 |
| VI. | CONCLUSION | 10 |

# **TABLE OF AUTHORITIES**

Page(s)

**Federal Cases**

*Athena Diagnostics v. Mayo Collaborative Servs.*,
   275 F. Supp. 3d 306 (D. Mass. 2017), *aff'd*, 915 F.3d 743 (Fed. Cir. 2019) ............................ 9

*Braemar Mfg. v. ScottCare, Corp.*,
   816 F. App'x 465 (Fed. Cir. 2020) ........................................................................................... 8

*CardioNet, LLC v. InfoBionic, Inc.*,
   816 F. App'x 471 (Fed. Cir. 2020) ...................................................................................... 9, 10

*Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*,
   776 F.3d 1343 (Fed. Cir. 2014) ................................................................................................ 9

*Cyberfone Sys. v. CNN Interactive Grp.*,
   558 F. App'x 988 (Fed. Cir. 2014) ........................................................................................... 9

*Doe v. Brown Univ.*,
   943 F.3d 61 (1st Cir. 2019) ....................................................................................................... 5

*EcoServices, LLC v. Certified Aviation Servs., LLC*,
   No. 2019-1602, 2020 WL 5949809 (Fed. Cir. Oct. 8, 2020) .................................................... 7

*Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*,
   958 F.3d 1178 (Fed. Cir. 2020) .............................................................................................. 10

*Exergen Corp. v. Thermomedics, Inc.*,
   132 F. Supp. 3d 200 (D. Mass. 2015), *aff'd* 653 F. App'x 760 (Fed. Cir. 2016) ...................... 2

*FairWarning IP, LLC v. Iatric Systems, Inc.*
   839 F.3d 1089 (Fed. Cir. 2016) ................................................................................................ 9

*Gordon v. Starwood Hotels & Resorts Worldwide, Inc.*,
   238 F. Supp. 3d 229 (D. Mass. 2017) ....................................................................................... 5

*Gottschalk v. Benson*,
   409 U.S. 63 (1972) .................................................................................................................. 10

*Haven Real Estate Grp., LLC v. Bell Atl. Mobile of Mass. Corp.*,
   236 F. Supp. 3d 454 (D. Mass. 2017) ....................................................................................... 6

*Henrie v. Northrop Grumman Corp.*,
   No. 2:04-CV-00296, 2005 WL 8177166 (D. Utah Apr. 22, 2005) ........................................... 4

*Hicks v. Johnson*,
    755 F.3d 738 (1st Cir. 2014) ................................................................................... 4, 5, 6

*Jackson v. Johnson & Johnson & Janssen Pharm., Inc.*,
    330 F. Supp. 3d 616 (D. Mass. 2018) ................................................................................ 5

*Lewis v. Bank of New York Mellon Tr. Co.*,
    No. 16-cv-11122, 2017 WL 129994 (D. Mass. Jan. 12, 2017) ......................................... 6

*Mariani–Colon v. Dep't of Homeland Security*,
    511 F.3d 216 (1st Cir. 2007) .............................................................................................. 2

*Parker v. Flook*,
    437 U.S. 584 (1978) ........................................................................................................ 10

*In re PHC, Inc. S'holder Litig.*
    762 F.3d 138 (1st Cir. 2014) ..................................................................................... 4, 5, 6

*Pina v. Children's Place*,
    740 F.3d 785 (1st Cir. 2014) ......................................................................................... 4, 6

*Reese v. Sprint Nextel Corp.*,
    774 F. App'x 656 (Fed. Cir. 2019) ................................................................................ 9, 10

*Renaissance Dev. Corp. v. Buca V, LLC*,
    146 F. Supp. 3d 261 (D. Mass. 2015) ................................................................................ 5

*Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.*,
    730 F.3d 23 (1st Cir. 2013) ............................................................................................ 4, 7

*SAP America, Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018) ..................................................................................... 9, 10

*Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*,
    874 F.3d 1329 (Fed. Cir. 2017) .......................................................................................... 9

*Univ. of Fla. v. Research Found. v. Gen. Elec. Co.*,
    916 F.3d 1363 (Fed. Cir. 2019) .......................................................................................... 3

*Zimmerman v. Cambridge Credit Counseling*,
    529 F. Supp. 2d 254 (D. Mass. 2008), *aff'd sub nom. Zimmerman v. Puccio*,
    613 F.3d 60 (1st Cir. 2010) ................................................................................................ 2

**Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................................................... 8

Fed. R. Civ. P. 56.1 ............................................................................................................. 1, 2, 3

Fed. R. Civ. P. 56(a) ............................................................................................................... 2

Fed. R. Civ. P. 56(d) ........................................................................................................ *passim*

Case 1:17-cv-10445-IT   Document 118   Filed 11/17/20   Page 5 of 16

**I.    INTRODUCTION**

The Court should grant summary judgment that the asserted claims of the '207 patent are invalid under § 101 because CardioNet has failed to raise a genuine dispute as to any material fact. Incredibly, after insisting that the factual record required development before § 101 could be addressed, CardioNet fails to cite a *single piece* of extrinsic evidence to rebut InfoBionic's extensive evidence showing that doctors had long identified AF by looking at the variability in time between heartbeats, taking PVCs into account. In its responsive Local Rule 56.1 statement, CardioNet *only* cites the '207 patent—in *one* responsive statement. CardioNet otherwise fails to cite evidence of any kind. Thus, ninety-five of InfoBionic's ninety-six statements of material fact are, or may be deemed, admitted. L.R. 56.1.

CardioNet resorts to Federal Rule of Civil Procedure 56(d), trying to justify its refusal to identify any contrary evidence, but CardioNet has not met its burden to delay the Court's adjudication. CardioNet cannot show good cause for failure to discover relevant facts earlier because CardioNet engaged in deliberate delay—the opposite of the required diligence. CardioNet further failed to provide any plausible basis for believing that specific facts exist that would influence the outcome of this motion. There are none.

CardioNet repeats its mandate rule arguments from its motion for judgment on the pleadings, but those fail for reasons explained in InfoBionic's opposition. *See* [#107]. Finally, CardioNet summarily contends that outstanding claim construction issues warrant deferring adjudication of § 101, but this is nothing more than another excuse to avoid addressing the merits of InfoBionic's motion. CardioNet never argues that the asserted claims would be patent eligible under any particular claim construction, and regardless, the asserted claims are ineligible under either party's proposed constructions.

1

## II. THE UNDISPUTED RECORD ESTABLISHES INELIGIBILITY UNDER § 101

InfoBionic is "entitled to judgment as a matter of law" that the asserted claims of the '207 patent are invalid under § 101 because CardioNet has failed to show there is a "genuine dispute as to any material fact." Fed. R. Civ. P. 56(a); *Exergen Corp. v. Thermomedics, Inc.*, 132 F. Supp. 3d 200, 202 (D. Mass. 2015), *aff'd* 653 F. App'x 760 (Fed. Cir. 2016).

CardioNet's opposition and responsive L.R. 56.1 statement cite no evidence other than the '207 patent, and CardioNet only cites the '207 patent in response to one fact (Fact No. 83). CardioNet's deficient responses to all other statements of fact (summarized below) fail to convert those facts with any evidence.

- 16 material facts are "[u]ndisputed." [#110 (Fact Nos. 3-6, 9, 11-12, 16, 20-24, 76, and 82)].
- 6 facts are "not dispute[d]," though CardioNet quibbles over their language and import. *Id.* (Fact Nos. 1-2, 7-8, 13, and 15).
- 10 material facts allegedly are disputed, but CardioNet fails to cite any evidence in its responses, in violation of the requirement that disputes be substantiated with citations to "affidavits, depositions and other documentation." L.R. 56.1; *see also* [#110 (Fact Nos. 17-19, 25, 75, 77, 81, and 86-88)].
- 63 responses include only objections and cite CardioNet's deficient Rule 56(d) declaration. [#110 (Fact Nos. 10, 26-74, 78-80, 84-85, and 89-96)]; *infra* Sec. III.

Consequently, 95 of InfoBionic's 96 statements of material fact should be accepted "as true."[1] *Zimmerman v. Cambridge Credit Counseling*, 529 F. Supp. 2d 254, 258 n.3 (D. Mass. 2008) ("Although [non-movants] lodged objections to a number of statements in [movants'] 56.1 statement, they often did not cite any record evidence …. In such instances, the court has taken the [movants'] account as true."), *aff'd sub nom. Zimmerman v. Puccio*, 613 F.3d 60 (1st Cir. 2010); *see also* L.R. 56.1; *Mariani–Colon v. Dep't of Homeland Security*, 511 F.3d 216, 220 (1st

---

[1] With respect to IB SMF 83, CardioNet disputes how the '207 patent describes "logic." *See* [#111 at 33]. But CardioNet evidently contends that "logic" has a *broader* meaning, which only supports grant of InfoBionic's motion and does not raise a genuine dispute of material fact. *Id.*

2

Cir. 2007) ("Given [Local Rule 56.1's] important purpose, this Court has repeatedly upheld its enforcement, stating that litigants ignore it 'at their peril.'").

These undisputed facts, including those listed below, establish that the asserted claims are patent ineligible because they merely automate longstanding diagnostic processes using generic components and off-the-shelf technology:

- "Doctors diagnosing [AF] have long understood the need to differentiate and take into account PVCs," and "by January 2004, it was routine for doctors diagnosing … [AF] to differentiate, and take into account, whether [a heart] rhythm is 'irregularly irregular' and thus consistent with [AF], or whether it is more 'regularly irregular' group beating and therefore more consistent with PVCs."  IB SMF 27, 40.[2]
- Claim 1 is "directed to diagnostic processes doctors have long used in diagnosing [AF], while taking into account variability caused by ventricular beats, such as PVCs, to avoid false positives and produce more accurate diagnoses," and "recites nothing more than a computerized version of … the steps doctors go through in their minds when looking at a patient's ECG."  IB SMF 30, 36.
- Before January 2004, "devices for monitoring cardiac activity," "QRS detectors," "ventricular beat detectors," and "body surface electrodes" were conventional. Also, before that time, ECG devices "routinely used machine readable instructions, hardware and/or a combination of these and/or other instructions" and "generat[ed] AF events"; "it was well known that beat-to-beat variability could be determined using three successive QRS complexes"; "it was conventional for doctors to apply nonlinear functions to ECG data, including to assess the relevance of PVCs to diagnoses of [AF]"; and "[c]ollecting and transmitting ECG data to a remote location … was conventional."  IB SMF 78-79, 84-85, 91, 93-95.

It is not enough to point to conventional activities and mental processes—e.g., longstanding diagnostic processes—and say "'do it on a computer.'"  *Univ. of Fla. v. Research Found. v. Gen. Elec. Co.*, 916 F.3d 1363, 1366-68 (Fed. Cir. 2019) (ineligible claims for "receiving physiologic treatment data" from bedside machines and analyzing it to assist clinical diagnoses).

### III.  CARDIONET'S INVOCATION OF RULE 56(d) SHOULD BE REJECTED

The Court should not defer adjudication under Rule 56(d), which "is meant to minister to

---

[2] Unless otherwise noted, internal citations and quotations are omitted and emphasis is added.

3

the vigilant, not to those"—like CardioNet—"who slumber upon perceptible rights." *Rivera-Almodovar v. Instituto Socioeconomico Comunitario, Inc.*, 730 F.3d 23, 29 (1st Cir. 2013). CardioNet had to demonstrate "due diligence *both* in pursuing discovery *before* the summary judgment initiative surfaces *and* in pursuing an extension of time thereafter," but has failed to do so because CardioNet has done the opposite—engaged in delay tactics. *Pina v. Children's Place*, 740 F.3d 785, 794-5 (1st Cir. 2014) (emphasis original); *see also* [#102 at 20].

> As explained in the one case from this circuit that CardioNet relies on ([#109 at 6-7]):
>
> If the reason [a] party cannot "adduce the facts essential to opposing summary judgment" is incomplete discovery, the party's explanation … should:  (i) "**show good cause** for the failure to have discovered the facts sooner"; (ii) "set forth *a plausible basis* for believing that specific facts ... probably exist"; and (iii) "indicate how the emergent facts ... **will influence the outcome** of the pending summary judgment motion."

*In re PHC, Inc. S'holder Litig.* 762 F.3d 138, 143 (1st Cir. 2014);[3] *see also Hicks v. Johnson*, 755 F.3d 738, 743 (1st Cir. 2014) (applying these requirements and affirming denial of Rule 56(d) motion).  In contrast to the plaintiffs in *PHC*—who complied with these requirements by submitting a "fourteen-page …. [a]ffidavit [that] chronicle[d] plaintiffs' attempts to obtain discovery and defendants' failure to provide it" and "specifie[d] the essential information, in defendants' hands, that would support plaintiffs' opposition to the motion for summary judgment," *id.* at 142—CardioNet has failed to meet any part of this three-part test.

CardioNet's conclusory, unsupported three-page Rule 56(d) declaration fails to (i) show good cause for failing to discover any relevant facts, (ii) "specify the evidence that [CardioNet]

---

[3] CardioNet string cites cases from other circuits [#109 at 7], but those merely stand for the proposition that relief under Rule 56(d) is properly granted *if* the requisite showings are made. Those cases show that the rule "does not operate automatically"; even before discovery closes, a party "must satisfy" the rule's requirements "to get the benefit of its protections." *Henrie v. Northrop Grumman Corp.*, No. 2:04-CV-00296, 2005 WL 8177166, at *1 (D. Utah Apr. 22, 2005).

4

expect[s] to obtain," *Hicks*, 755 F.3d at 744, or (iii) explain "how the information to be obtained

… would … defeat[]" InfoBionic's motion, *Doe v. Brown Univ.*, 943 F.3d 61, 71 (1st Cir.

2019).[4] CardioNet cannot identify any discovery that InfoBionic failed to provide because—

unlike the defendants in *PHC*—InfoBionic produced the evidence it relies on and made its

expert, Dr. Akar, available for a deposition, which CardioNet *refused to take*. *In re PHC*, 762

F.3d at 143. Despite its "head in the sand" approach to this discovery, CardioNet nevertheless

argues that the Court should stay its hand because CardioNet (i) did not hire a physician expert

until October 20, 2020, (ii) has not deposed Dr. Lev Korzinov "in this case," and (iii) "needs

time to collect evidence from discovery materials, such as *past* depositions and expert reports."

[#111]. As a matter of law, these excuses cannot meet CardioNet's burden to justify deferral of

InfoBionic's motion under Rule 56(d).

*First*, CardioNet's waiting until October 20, 2020 to retain a physician expert is no basis

for invoking Rule 56(d) because CardioNet was not diligent. [#111 ¶ 3]. The parties have been

litigating since May *2015*, and CardioNet previously hired and used a physician expert. *See,

e.g.*, [CA No. 1:15-cv-11803, #444-1, CardioNet's trial witness list (identifying Dr. Jeffrey

Goldberger)]. InfoBionic also notified CardioNet and the Court in *early August* 2020 that it

would file this motion and, on August 11, the Court ordered that InfoBionic could file. [#77].

Further, InfoBionic served Dr. Akar's expert declaration on September 21 ([#85-6])—a month

before CardioNet purportedly hired is second expert physician. CardioNet had over ten weeks to

respond to Dr. Akar's declaration with its opposition—more than double the time it would have

---

[4] *See also Jackson v. Johnson & Johnson & Janssen Pharm., Inc.*, 330 F. Supp. 3d 616, 624 (D. Mass. 2018) (refusing to apply Rule 56(d) where plaintiff "failed to demonstrate that further discovery will influence the outcome of the pending summary judgment motion"); *Renaissance Dev. Corp. v. Buca V, LLC*, 146 F. Supp. 3d 261, 269 (D. Mass. 2015) (same); *Gordon v. Starwood Hotels & Resorts Worldwide, Inc.*, 238 F. Supp. 3d 229, 239 (D. Mass. 2017) (same).

5

had to respond to an expert report ([#81 ¶ 7(a)])—and yet could muster nothing.  CardioNet not only has failed to show "good cause" to justify its delay but also has not identified "a plausible basis for believing" that its physician expert will testify to any "specific facts" that would "influence the outcome" of this motion.  *In re PHC*, 762 F.3d at 143; [#111 at ¶¶ 2-4].

*Second*, with respect to Dr. Korzinov, CardioNet fails to tell the Court that CardioNet waited **until October 27**—a week before filing its opposition—to subpoena him, even though CardioNet has known about Dr. Korzinov (its former employee and the only named inventor on the '207 patent) for a decade, deposed him four years ago about the '207 patent in the earlier case, and cited that deposition testimony as its basis for asserting the '207 patent.  *See, e.g.*, [#33-1 at 7, 10, 14, 18 (citing Dr. Korzinov's Oct. 26, 2016 deposition transcript)].  CardioNet hopes to use its belated subpoena as another excuse for delay, but that is not good cause for invoking Rule 56(d).  *See Haven Real Estate Grp., LLC v. Bell Atl. Mobile of Mass. Corp.*, 236 F. Supp. 3d 454, 461 (D. Mass. 2017) (Rule 56(d) motion rejected where Plaintiff "provided no excuse for its failure to make arrangements" at an earlier stage "to take the deposition" it argued was needed).  And CardioNet fails to identify any "plausible basis" for believing another deposition of Dr. Korzinov will yield "specific facts" that would "influence the outcome of" this motion.  *In re PHC*, 762 F.3d at 143; *see* [#111 at ¶ 5-6].

*Third*, CardioNet's failure to timely review "past depositions and expert reports" ([#111 ¶ 7]) before responding to this motion is the definition of inexcusable delay—and the opposite of the required diligence.  *Pina*, 740 F.3d at 794-5.  CardioNet fails to "specify the evidence that [it] expect[s] to" find, let alone how it may "influence the outcome of" this motion.  *Hicks*, 755 F.3d at 744; *In re PHC*, 762 F.3d at 143; *see also Pina*, 740 F.3d at 795 ("mere[] conjecture[] that something might be discovered … is insufficient"); *Lewis v. Bank of New York Mellon Tr. Co.*,

No. 16-cv-11122, 2017 WL 129994, at *4 (D. Mass. Jan. 12, 2017) ("[V]ague and unsupported assertion[s] fail[] to satisfy any of [Rule 56(d)'s] requirements.").

Accordingly, this case is a paradigmatic example of when Rule 56(d) should ***not*** apply. "The court need not employ the rule to spare [CardioNet] from [its] own lack of diligence." *Rivera-Almodovar*, 730 F.3d at 29.

### IV.   THE FEDERAL CIRCUIT'S DECISION DOES NOT SUPPORT DENYING SUMMARY JUDGMENT

Rather than address the merits of InfoBionic's summary judgment motion, CardioNet improperly uses its opposition to submit a reply in support of its motion for judgment as a matter of law based on the mandate rule ([#96]), reiterating its legally erroneous positions in that motion. [#109 at 2-5]. InfoBionic explained why those fail:  First, the mandate rule does not apply.  Second, even if the mandate rule applied (it does not), three separate exceptions to the rule permit adjudication of § 101:  (i) the Federal Circuit's decision was made on an inadequate record, (ii) significant new (and now undisputed) evidence exists, and (iii) applying the mandate rule would result in manifest injustice.  Third, the rule is discretionary, so the prudent and efficient course for this Court is to reach the case-dispositive merits of § 101.  [#107 at 7-19].

CardioNet fails to confront the exceptions InfoBionic identified, repeatedly referring to what it deems the "Federal Circuit's express, unambiguous holding that the record on appeal *was* adequate to resolve eligibility *without* an assessment of what was done by doctors in the past." [#109 at 4 (CardioNet's emphasis)].  CardioNet's contention that the Federal Circuit concluded that the record on appeal was adequate to make a final decision under § 101 is untenable.  The Federal Circuit explicitly faulted this Court for assuming doctors had taken PVCs into account while diagnosing AF and premised its holding on the lack of record evidence on that point, as CardioNet's counsel admitted in open court.  [#102 at 15-16]; *see also EcoServices, LLC v.*

7

*Certified Aviation Servs., LLC*, No. 2019-1602, 2020 WL 5949809, at *18 n.4 (Fed. Cir. Oct. 8, 2020) (Dyk, J., dissenting-in-part).

CardioNet repeatedly asserts that the Federal Circuit "expressly" and "unambiguously" rejected any further proceedings ([#109 at 3-6]), but CardioNet's repetition of wrong assertions does not make them any less erroneous. *Cf.* [#104-1, Aug. 11 Hr'g Tr. at 14:2-4 (The Court: "I don't, frankly, find the federal circuit's decision terribly easy to parse through"); [#104-15, Oct. 7 Hr'g Tr. at 10:6-8 (similar)]. CardioNet fails to acknowledge the context of the Federal Circuit's decision, including its conclusion that "a remand is unnecessary." [#65, Maj. Op. at 19]. That conclusion answered the question of whether the Federal Circuit could "resolve this *Alice* step one issue **at the Rule 12(b)(6)** stage without remanding," *id.* at 18, i.e., without remanding for further *pleading-stage* proceedings. [#107 at 10]. It was in that context that the majority made the allegedly "clear statements" on which CardioNet relies. [#109 at 3-4]. InfoBionic has neither "ignore[d]" nor "avoid[ed]" ([#109 at 3-4]) those statements. InfoBionic has addressed the Federal Circuit's decision as a whole, in detail, and has explained why it amounts to a denial of InfoBionic's Rule 12(b)(6) motion and does not bar adjudication of § 101 on a developed—and now undisputed—factual record. [#102 at 5 n.3; 107 at 4].

CardioNet emphasizes the Federal Circuit's discussion of the '207 patent's purported "advantages," contending this "provides direct and dispositive evidence" of eligibility. [#109 at 5-6]. CardioNet is wrong. Even if the disclosed "advantages" were attributable to the alleged inventions of the '207 patent, that would not render the claims patentable. Numerous claims have been held ineligible although they may recite advantageous implementations where, as here, those claims merely automate longstanding practices. *See Braemar Mfg. v. ScottCare, Corp.*, 816 F. App'x 465, 469 (Fed. Cir. 2020) (claims ineligible despite CardioNet's arguments

8

that they "increase[d] the relevance of data presented to physicians" and were "unlike anything [previously] available"); *CardioNet, LLC v. InfoBionic, Inc*., 816 F. App'x 471, 476 (Fed. Cir. 2020) (similar).[5]

## V.   CLAIM CONSTRUCTION IS NOT A BAR TO ADJUDICATION OF § 101

There is no reason to defer resolution of InfoBionic's motion until after claim construction. The parties agree that "claim construction is not an inviolable prerequisite" to a § 101 determination. *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014); [#109 at 10]; *Reese v. Sprint Nextel Corp.*, 774 F. App'x 656, 660 (Fed. Cir. 2019) ("The district court did not err in deciding summary judgment without construing the claims."), *cert. denied*, 140 S. Ct. 2507 (2020). And, without construing the claims, it is proper to find them ineligible by adopting constructions **the patentee** proposes—not those InfoBionic proposes, as CardioNet wrongly argues (#109 at 9-10). *See Content Extraction*, 776 F.3d at 1349; *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1338 (Fed. Cir. 2017). InfoBionic thus presented its motion under CardioNet's proposed constructions, which only limit the term "ventricular beats" to PVCs. [#102 at 3-4, 13-14].

Regardless, CardioNet fails to present any argument that the asserted claims would be patent-eligible under ***any*** particular construction proposed by either party. *See* [#109 at 10-12]. CardioNet "merely points to claim language [under] consider[ation] here," which is insufficient. *Cyberfone Sys. v. CNN Interactive Grp.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (affirming

---

[5] *See also SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1170 (Fed. Cir. 2018) ("Under the principles developed in interpreting § 101, patent law does not protect such claims, without more, no matter how groundbreaking the advance."); *FairWarning IP, LLC v. Iatric Sys., Inc.* 839 F.3d 1089, 1095 (Fed. Cir. 2016) (claims ineligible despite patent's "purport[ing] to accelerate" analysis of medical records); *Athena Diagnostics v. Mayo Collaborative Servs.*, 275 F. Supp. 3d 306, 307-13 (D. Mass. 2017) (claims ineligible despite patent's purportedly providing "a ***more accurate and speedy diagnosis*** of" certain patients with a chronic autoimmune disorder), *aff'd*, 915 F.3d 743 (Fed. Cir. 2019).

ineligibility under § 101 before claim construction where patentee "argue[d] that claim construction must precede the § 101 analysis, but d[id] not explain which terms require construction or how the analysis would change"); *see also Elec. Commc'n Techs., LLC v. ShoppersChoice.com, LLC*, 958 F.3d 1178, 1183-84 (Fed. Cir. 2020) (similar). In any event, the asserted claims are ineligible under either party's proposed constructions.

The asserted claims are ineligible under CardioNet's proposed constructions because (other than limiting "ventricular beats" to PVCs) CardioNet proposes no limiting constructions. [#116]. Such "broad[] constructions" do not affect the § 101 analysis. *Reese*, 774 F. App'x at 660. Although InfoBionic's "proposed constructions might be more specific and therefore limit" the claims, that alone does not "transform" the claims into eligible subject matter. *Id*.

InfoBionic's proposed constructions reflect the mathematical processes (i.e., algorithms) that the '207 patent discloses for its claimed systems ([#113]), and it is well established that addition of a mathematical equation or process does not render abstract claims patent eligible. *See Gottschalk v. Benson*, 409 U.S. 63, 67 (1972) (claims for computerized "mathematical procedures" ineligible); *Parker v. Flook*, 437 U.S. 584, 597 (1978) (claims reciting calculating an alarm limit using a mathematical formula with a "weighting factor" ineligible); *CardioNet, LLC*, 816 F. App'x at 476 (CardioNet claims ineligible despite reciting "a mathematical computation"—a purportedly "new metric"); [#55 at 16 ("[T]he addition of a mathematical equation… cannot save" claims from being invalidated)]. Indeed, even if such a mathematical analysis were "'[g]roundbreaking, innovative, or even brilliant,' … that is not enough" because "the focus of the claims is not any improved computer" or particular improved device. *SAP*, 898 F.3d 1163.

## VI.   CONCLUSION

InfoBionic's motion for summary judgment should be granted; the claims are ineligible.

Dated:  November 17, 2020  Respectfully submitted,

/s/ Charles H. Sanders
Charles H. Sanders (BBO #646740)
Christopher W. Henry (BBO #676033)
LATHAM & WATKINS LLP
John Hancock Tower, 27th Floor
200 Clarendon Street
Boston, MA 02116
Telephone: (617) 948-6000
Facsimile: (617) 948-6001
charles.sanders@lw.com
christopher.henry@lw.com

Maximilian A. Grant (*pro hac vice*)
Gabriel K. Bell (*pro hac vice*)
Diane E. Ghrist (*pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, N.W., Ste. 1000
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
max.grant@lw.com
gabriel.bell@lw.com
diane.ghrist@lw.com

*Counsel for Defendant InfoBionic, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document, which was filed with the Court through the CM/ECF system, will be sent electronically to all registered participants as identified on the Notice of Electronic Filing ("NEF"), and paper copies will be sent on November 17, 2020 to those identified as non-registered participants.

/s/ Charles H. Sanders
Charles H. Sanders