UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CARDIONET, LLC, and BRAEMAR MANUFACTURING, LLC, | * * * | |
| Plaintiffs, | * * | |
| v. | * * | Civil Action No. 1:17-cv-10445-IT |
| INFOBIONIC, INC., | * * | |
| Defendant. | * | |

ORDER

April 30, 2021

TALWANI, D.J.

Before the court are Plaintiffs CardioNet, LLC, and Braemar Manufacturing, LLC's (collectively, "CardioNet") Motion for Judgment on the Pleadings [#95] and Defendant InfoBionic, Inc.'s ("InfoBionic") Motion for Summary Judgment [#101]. CardioNet requests judgment in its favor on InfoBionic's defense that the asserted patent, U.S. Patent No. 7,941,207 ("the '207 Patent"), is invalid under 35 U.S.C. § 101. InfoBionic requests the opposite, that is that the court rule that the '207 Patent is directed to patent-ineligible subject matter under § 101. For the reasons set forth below, CardioNet's Motion for Judgment on the Pleadings [#95] is DENIED and InfoBionic's Motion for Summary Judgment [#101] is DENIED WITHOUT PREJUDICE.

I. CardioNet's Motion for Judgment on the Pleadings

The court previously allowed InfoBionic's Rule 12(b)(6) Motion to Dismiss [#36], finding that the '207 Patent was invalid under § 101 as construed by Alice Corp. Pty. Ltd. v.

CLS Bank Intern., 573 U.S. 208 (2014), and its progeny. Mem. & Order [#55]. Namely, the court found that, at Alice step one, the claims of the '207 patent were directed to the abstract idea of using computerized technology to improve the field of cardiac telemetry. See id. at 6–9. Then, at Alice step two, the court found that the '207 Patent did not contain an "inventive concept" that would render the claims nonetheless patent-eligible. Id. at 9–17.

On appeal, the Federal Circuit reversed this court's ruling granting InfoBionic's motion to dismiss and remanded the case for further proceedings. See CardioNet, LLC v. InfoBionic, Inc, 955 F.3d 1358, 1374 (Fed. Cir. 2020), cert. denied, 141 S. Ct. 1266 (2021). In its Motion for Judgment on the Pleadings [#95], CardioNet argues that the Circuit's opinion constituted a final adjudication of patent-eligibility and that the law of the case doctrine and the mandate rule bar any further proceedings on that issue. InfoBionic rebuts that neither the mandate rule nor the law of the case doctrine bar further proceedings on the merits of the invalidity defense where the Federal Circuit's ruling only concluded that this court improperly found the '207 Patent ineligible on the pleadings.[1] See InfoBionic Opp'n [#107]. For the reasons that follow, the court finds that on remand on a reversal of an order granting a motion to dismiss, the mandate rule and law of the case doctrine apply to the question of the sufficiency of the pleadings (the issue raised on appeal) but do not bar further development of the record and adjudication on the merits.

The Federal Circuit's opinion makes plain that the error in this court's reasoning in granting InfoBionic's Motion to Dismiss was that this court failed to properly apply the Rule

---

[1] InfoBionic also argues that, even if the mandate rule applied, three exceptions to the mandate rule would nevertheless allow the court to adjudicate the § 101 issue. See InfoBionic Opp'n 15–19 [#107].

12(b)(6) standard and "construe all facts and draw all reasonable inferences in favor of CardioNet, the non-moving party." CardioNet, 955 F.3d at 1371. "At the heart of the district court's erroneous step one analysis," the Circuit wrote, was this court's "incorrect assumption that the claims are directed to automating known techniques." Id. at 1370. This assumption was incorrect where "nothing in the record supports the district court's fact finding (and InfoBionic's assertion) that doctors long used the claimed diagnostic processes." Id. at 1371. The "record" on a Rule 12(b)(6) motion is limited to the facts alleged in the complaint and the documents incorporated therein, see Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008); here, the "record" consisted of the First Amended Complaint [#25] and attached documents, including the '207 Patent. The court erred in finding from this record that doctors long used the claimed diagnostic processes.

In addition, the Circuit held that the court's analysis of patent eligibility failed to give credit to the "written description's recitation of the advantages of the claimed invention." CardioNet, 955 F.3d at 1371. In its Rule 12(b)(6) analysis, the Circuit "accept[ed] those statements as true" and found them to be "important in [their] determination that the claims are drawn to a technological improvement" and not an abstract idea under Alice step one. Id. at 1370–71. Where the order on appeal was this court's Memorandum and Order [#55] granting a Rule 12(b)(6) motion, and the Federal Circuit explicitly based its § 101 analysis on presumptions that CardioNet is only entitled to on a Rule 12(b)(6) motion, it would make little sense to now find, as CardioNet suggests, that the Circuit's statements regarding the presumptions that nonmovants are entitled to on a Rule 12(b)(6) motion (and this court's failure to properly apply the Rule 12(b)(6) standard) constituted mere commentary not ultimately relevant to the Circuit's holding.

At the center of CardioNet's argument that the § 101 issue has been finally decided is Section II.C of the Circuit's opinion.[2] There, the Circuit considered the parties' dispute as to whether the Alice step one issue should be remanded to this court for further proceedings. As CardioNet puts it, "[t]he Federal Circuit expressly considered whether to remand the eligibility issue to this Court, and decided not to." CardioNet Mem. 6 [#96]. CardioNet (correctly) notes that in Section II.C, the Circuit stated that "Alice step one presents a legal question that can be answered based on the intrinsic record" and that, accordingly, "a remand is unnecessary." Id. (citing CardioNet, 955 F.3d at 1372). However, the Circuit framed its entire analysis in Section II.C as addressing "whether we can resolve this Alice step one issue at the Rule 12(b)(6) stage without remanding to assess the state of the art as of the invention date to determine whether the asserted claims are directed to automating a practice long used by doctors." CardioNet, 955 F.3d at 1371–72 (Fed. Cir. 2020) (emphasis added). Based on this explicit qualification, the court understands the Federal Circuit to have ruled that no remand was necessary to adjudicate InfoBionic's Rule 12(b)(6) motion, not that the Federal Circuit was sua sponte entering summary judgment against InfoBionic as to its § 101 defense.

Finally, CardioNet's argument that the Federal Circuit conclusively decided the § 101 question overlooks the importance of claim construction in the § 101 analysis. Both this court and the Federal Circuit did not purport to construe the claims, but instead construed any ambiguities in the claim language in CardioNet's favor. See Mem. & Order 3 (citing Aatrix Software, Inc. v. Green Shades Software, Inc., 882 F.3d 1121, 1125 (Fed. Cir. 2018)); CardioNet, 955 F.3d at 1364 n.1; see also Bascom Glob. Internet Servs., Inc. v. AT&T

---

[2] Section II.C constituted a majority opinion.

Mobility LLC, 827 F.3d 1341, 1352 (Fed. Cir. 2016) (noting claims must be construed in favor of nonmovant on a Rule 12(b)(6) motion). Where, as here, the parties hold substantial disputes as to the scope of the claims, it is not apparent how the § 101 issue could have been finally resolved without the benefit of claim construction. Cf. Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada (U.S.), 687 F.3d 1266, 1273–74 (Fed. Cir. 2012) ("We note, however, that it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."). Indeed, CardioNet makes this very point in its opposition to InfoBionic's Motion for Summary Judgment [#101], arguing that it would be improper to grant InfoBionic's motion for summary judgment without either first construing the claims or, alternatively, adopting constructions favorable to CardioNet as the non-moving party. CardioNet Opp'n 10 [#109] (citing Content Extraction and Transmission, LLC v. Wells Fargo Bank, NA, 776 F.3d 1343, 1349 (Fed. Cir. 2014); Bancorp, 687 F.3d 1273–74; Fed. R. Civ. P. 56). The necessary corollary of this argument is that it would be similarly improper to enter judgment on the pleadings *in CardioNet's favor* on InfoBionic's § 101 defense without construing the terms in the manner most favorable *to InfoBionic*, something that neither this court nor the Federal Circuit did in its § 101 analysis.

For these reasons, the court concludes that the Federal Circuit's mandate did not constitute a judgment in favor of CardioNet on InfoBionic' § 101 defense but instead a reversal of this court's improvident ruling granting InfoBionic's Rule 12(b)(6) Motion to Dismiss. Accordingly, CardioNet's Motion for Judgment on the Pleadings [#95] is DENIED.

II.     InfoBionic's Motion for Summary Judgment

InfoBionic's Motion for Summary Judgment [#101] requests that the court enter judgment in InfoBionic's favor on InfoBionic's § 101 defense. InfoBionic argues that it is undisputed that the claims merely computerize pre-existing techniques for diagnosing Atrial Fibrillation and Atrial Flutter, rendering them ineligible under § 101. InfoBionic Mem. 1 [#102]. In contrast to its earlier Rule 12(b)(6) motion, InfoBionic's summary judgment motion includes expert opinion and multiple documentary references that assertedly support its positions.

CardioNet opposes InfoBionic's Motion on principally three grounds. See CardioNet Opp'n [#109]. First, CardioNet argues that the Federal Circuit has already resolved the § 101 issue and that this court is bound by its mandate and the law of the case doctrine. Second, CardioNet argues that the court should defer or deny InfoBionic's Motion based on Rule 56(d) as CardioNet "needs expert medical evidence to evaluate and respond to" InfoBionic's expert's medical opinions. Third, CardioNet argues that the court should defer or deny InfoBionic's motion in light of unresolved claim construction disputes.

As an initial matter, for the reasons set forth above, the court concludes that the Federal Circuit's ruling did not constitute a final adjudication of InfoBionic's § 101 defense but instead a reversal of this court's grant of InfoBionic's Rule 12(b)(6) motion.

However, the court agrees with CardioNet that claim construction is necessary to the § 101 analysis. The parties both agree that claim construction is not an "'inviolable prerequisite'" to a validity determination under § 101. See InfoBionic Reply 9 [#118]; CardioNet Opp'n 10 [#109] (both quoting Content Extraction, 776 F.3d at 1349 (Fed. Cir. 2014)). However, the Circuit has stated that, because adjudicating questions of eligibility

under § 101 "requires a full understanding of the basic character of the claimed subject matter," it "will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis." Bancorp, 687 F.3d at 1273–74. Here, it is now apparent that the claim construction analysis is of great significance to the § 101 determination as the claim construction proceedings had the effect of crystalizing the scope of the claims. Specifically, before this court and at the Circuit, CardioNet argued that "the claims cover a specific device, having specific components, for reporting specific medical conditions in the human heart." CardioNet Opening Br. in No. 19-1149, ECF No. 23, 40 (Fed. Cir. Jan. 2, 2019). Construing the claims in the manner most favorable to CardioNet, the nonmovant, the Federal Circuit agreed with CardioNet that that the claims of the '207 Patent "do not 'fit into the familiar class of claims that' focus on 'certain independently abstract ideas that use computers as tools'" but instead "'an improvement in computers [and other technologies] as tools.'" CardioNet, 955 F. 3d at 1371 (quoting SAP Am., Inc. v. InvestPic, LLC, 898 F.3d 1161, 1168 (Fed. Cir. 2018)). But upon the closer scrutiny of the '207 Patent that accompanied claim construction proceedings in this case, the court ultimately found that, at least for the variability determination logic and relevance determination logic terms that are at the center of claim 1 and the asserted dependent claims, the claims *did not* contain structural limitations beyond the fact that they were functions implemented on a computer. See Claim Construction Order 11–16 [#202] (construing both "logic" terms as "any combination of hardware or software" that performed the claimed functions). Accordingly, the court finds that claim construction is necessary for evaluation of the question of patent-eligibility and that, for this reason, InfoBionic's pre-claim construction motion for summary judgment was premature.

CardioNet's Rule 56(d) argument and affidavit also contended that additional discovery was necessary. Although it is not completely clear what material facts CardioNet believed would be uncovered through this discovery, the court need not resolve whether the Rule 56(d) showing was sufficient. Now that fact discovery has concluded, see Elec. Order [#193], CardioNet has had a further sufficient opportunity to discover the necessary facts, and the court is denying InfoBionic's pre-claim construction motion for summary judgment as premature, the issue of further discovery is moot.

For these reasons, InfoBionic's Motion for Summary Judgment of Invalidity [#101] is DENIED without prejudice to renew in light of the court's construction of the relevant terms of the '207 Patent.

IT IS SO ORDERED.

Date: April 30, 2021                               /s/ Indira Talwani
                                                   United States District Judge